(88 South. 433)

**FIRST COLORED CUMBERLAND PRESBY-
TERIAN CHURCH et al. v. W. D. WOOD
LUMBER CO. (6 Div. 168.)**

(Supreme Court of Alabama. April 7, 1921.)

**1. Mechanics' liens** ⊜—1—**Exist only where given by statute.**

A materialman's lien is created by statute, and exists only where expressly given by statute.

**2. Mechanics' liens** ⊜—55(1) — **Materialman, seeking to enforce lien as original contractor, must prove valid contract with owner.**

Materialman, seeking to enforce mechanic's lien against owner on theory that the materialman is the original contractor as to the sale of the material to the owner, must establish a valid contract with the owner as a prerequisite to relief.

**3. Mechanics' liens** ⊜—281(3)—**Evidence held insufficient to establish contract between materialman and owner.**

In materialman's action to establish materialman's lien against owner, defended on ground that materialman's contract was with general contractor and not with owner, evidence *held* insufficient to establish a contract between materialman and owner.

**4. Evidence** ⊜—178(2)—**Secondary evidence of contents of writing destroyed by fire admissible.**

Secondary evidence of contents of written contract destroyed by fire *held* admissible.

Appeal from Circuit Court, Jefferson County; Horace C. Wilkinson, Judge.

Bill by the W. D. Wood Lumber Company against the First Colored Cumberland Presbyterian Church and others to enforce a materialman's lien. Decree for complainant, and respondents appeal. Reversed and rendered.

Percy, Benners & Burr, of Birmingham, for appellants.

The lien is of statutory origin, dependent in this case upon a valid contract with the owner or proprietor. 57 Ala. 598; 117 Ala. 589, 23 South. 526. The evidence fails to support this allegation. 78 Ala. 223. The contract, even if made as contended by appellees could not be enforced in this action against the appellant. 128 Ala. 208, 30 South. 526, 55 L. R. A. 211; 166 Ala. 348, 51 South. 947, 139 Am. St. Rep. 41. A statutory lien does not extend to unused material left on the premises. 99 Ala. 346, 12 South. 612.

A. C. & H. R. Howze, of Birmingham, for appellee.

Where the contract is made with the owner, the lien exists for the entire amount of the debt created for the material. 187 Ala. 318, 65 South. 825; 63 Ala. 225; 63 Ala. 338; 78 Ala. 222. The provision of the contract that the payment is not to be made until the job is completed does not deprive appellee of his lien, if his job is not complete, nor of its right to sue for its debt after a reasonable time. 115 Ala. 258, 22 South. 81; 128 Ala. 221, 29 South. 640; 193 Ala. 438, 69 South. 549. It would be inequitable that appellants should enjoy the benefit of appellee's material, without making compensation. 201 Ala. 539, 78 South. 893. The contract made with the officers bound the voluntary association. 5 C. J. 1345, 1350, 1352. A mistake in the name of the owner does not affect the lien. Section 4758, Code 1907.

GARDNER, J. This bill was filed by appellee, and seeks to establish and enforce a lien upon the church building of appellant, an unincorporated religious society, for material furnished in its improvement. The church authorities insisted that no contract of purchase was made by them with the complainant, but that the contract for the improvements was made with one Blackburn, a contractor, who was to do the entire work and furnish the material for a stated sum. The cause was submitted for final decree in the court below upon the depositions taken, resulting in a decree in favor of the complainant, from which defendants prosecute this appeal.

[1] A lien of this character is of peculiar statutory creation, and, as said in Copeland v. Kehoe & Ramsey, 67 Ala. 594, "founded and circumscribed by the terms of its creation, and the courts are powerless to take it up where the statute may leave it, and extend it to meet facts and circumstances, which they may believe present a case of equal merit, or a necessity of the same kind, as the cases or necessities for which the statute provides."

[2] The complainant here did not seek to enforce the lien to the extent of any unpaid balance due a contractor, but the bill is filed upon the theory that the complainant is the original contractor as to the sale of the material to the respondents. Such being the case, the establishment of a valid contract to that effect with the owner or proprietor is a prerequisite to relief. As pertinent to this question, the court in the Copeland Case, supra, said:

"The statute of force when the present contract was made obviously contemplated the lien should exist only where there was an express, as distinguished from an implied, contract under which the work was done, or the materials furnished. It is a lien for the price agreed upon, or compensation to be paid, the statute declared."

So far as we are advised, no change has been wrought in this respect as to this rule, either by statute or decision. The foregoing authority has found frequent citation in the subsequent decisions. First Ave. C. & L.

Co. v. McWilson, 182 Ala. 276, 62 South. 531; Randolph v. Builders' Supply Co., 106 Ala. 501, 17 South. 721; Selma Sash, etc., Fact. v. Stoddard, 116 Ala. 251, 22 South. 555. The question of prime importance, therefore, here presented, is whether or not there was in fact a contract of purchase by the respondent church with the complainant for the material which was to be used and went into this building.

[3] We do not consider a detailed discussion of the evidence would serve any useful purpose. It has been given most careful consideration in consultation, and the conclusion has been reached that the complainant has failed to carry the burden of proof resting upon it in this respect.

[4] We will briefly refer to some of the salient features of the testimony. It appears without dispute that respondent association, under the rules established by it, could only be bound by any contract by vote of the board composed of the deacons, elders, and the pastor, and that in November, 1915, they undertook to build this church, and entered into a contract with one Blackburn for its construction—he to furnish the material and do the work, according to specifications agreed upon, for the sum of $1,548. This contract was signed by the officers of the church and the contractor, but seems to have been subsequently destroyed by fire, and therefore secondary evidence of its contents was admissible. The managing salesman for the complainant lumber company seems to have made some estimate as to the material necessary, but he did this for Blackburn, the contractor. The contractor proceeded with the work, procuring the material from the complainant, and it is without dispute that he paid them every Saturday out of money paid him by the church. The contractor had been in that business for 12 or 13 years and during that time had "bought a good deal of lumber from W. D. Wood Lumber Company." He further testified that he had more business relations with them than any one else. Up to this time the church does not appear to have ever had any business relations with the complainant. After the work had proceeded under this contract some trouble arose in regard to the walls; they being, it seems, condemned by the city authorities as unsafe.

Up to that time we do not see that it could be seriously contended that the church had contracted any debt with the lumber company for the materials furnished, even in the light of the testimony of the complainant's manager, who stated that after the first estimate was made he saw the pastor, who told him "it would be all right, and they would see that it was paid," for it is not pretended that such a declaration, even by the pastor, could bind the association. When the walls had been condemned, and the work stopped, there was, according to the evidence for the complainant, the sum of $170.87 due for material theretofore furnished. This amount, therefore, we conclude was unquestionably due by the contractor to the complainant, and not by the church, as no contract of purchase had been made.

Some arrangement had to be made for the completion of the work, which required of course the outlay of an additional sum, and on February 29, 1916, the contractor together with the church board members met in the complainant's office, and, as testified by the complainant's manager, drew up a contract referred to as supplemental to the original contract entered into between the church and the contractor. No doubt there were some estimates made as to the completion of the building under the changed condition. This supplemental contract was drawn by complainant's manager, and signed by the contractor and the church authorities. It provided for the payment of $595, stipulating particularly as to what was to be done by the contractor. The above-named sum included the $170.87 for material theretofore furnished. The church authorities, by this contract, agreed "to pay the contractor and W. D. Wood Lumber Company the sum of $595 as follows, $85 to be paid the contractor March 3d, the balance to be paid him when job is completed in one check made to the W. D. Wood Lumber Company and John Blackburn and to be paid at the Alabama Penny Bank after check has been indorsed by both parties." On this second estimate of the material furnished, referred to as Exhibit B in the testimony, the complainant's manager had noted thereon that "the balance on the church account, $170.87, was to be paid out of check when church completed," and was placed there, so he stated, "merely as a memorandum for his personal use as to when he should expect payment of the balance." The $85 cash payment under this contract [supplemental] was paid by the church to the contractor; but he worked under this contract only a short time—just a week, according to his testimony. He then went to complainant to get an additional sum released, that he might carry on the work; but he states that complainant refused, insisting that the check was to be made jointly when the job was completed. The contractor insists that the agreement as to this joint check was made at the suggestion of complainant's manager and for its protection; not being able to get further funds released he (contractor) had to abandon the contract, and the church authorities engaged the services of another contractor, one Hudson, to complete the work for $550.

The evidence for the complainant is to some degree reconcilable with that of respondents, wherein the complainant insists that these officers had stated that they "would see that the material was paid for," in that the supplemental contract stipulated for the payment of the agreed sum by check

made payable to the contractor and the lumber company jointly; but, of course, according to its terms, this sum was only to be paid upon the completion of the work. As previously stated, under the first contract we do not think it could be seriously contended that the church could be held the purchaser of the material furnished therein, and after a most careful study of the evidence the conclusion has been reached that the supplemental contract was but a continuation of the first, and worked no change in this respect. Numerous witnesses for the respondents support the theory that the contractor was to furnish the material under both contracts, and that the church entered into no contract of purchase with the complainant. We think all the circumstances support this theory. The church authorities, it appears throughout, were making every effort to make one complete contract, what is termed "a lock and key job." The first contract clearly so provided, and the supplemental agreement likewise named a definite sum for completion of the building. But under complainant's contention the church might have become responsible for material furnished thereunder largely in excess of the stipulated sum, and thus have defeated their manifest purpose.

We are of the opinion the decree was erroneous, and that complainant has failed to establish a valid contract for the purchase of the material by respondents. The decree will be reversed, and one here rendered, dismissing the bill.

Reversed and rendered.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.