(136 So. 811)
## MARYLAND CASUALTY CO. v. DUPREE et al.

### 7 Div. 34.

Supreme Court of Alabama.

June 18, 1931.

As Modified on Denial of Rehearing October 15, 1931.

Hood & Murphree, of Gadsden, for appellant.

Goodhue & Lusk, of Gadsden, for appellees.

THOMAS, J.

The complaint, in two counts, was for the breach of a bond and a common count in assumpsit.

The motion for the transfer to the equity side of the court to enable the defendant to

assert an equitable defense was denied on the ground that such equitable defense in the nature of subrogation could be interposed and tried in the pending action at law. The pleading was in short by consent, as follows: "It is agreed between the parties in the above-captioned case, that the defendant may plead in short by consent all defenses appropriate to the causes of action stated in the several counts of the complaint, and that the plaintiff may reply to such defenses in short by consent all matters appropriate, and that either party may offer in proof the testimony of any witness or any evidence competent and relevant to the issues in the cause."

There was tender on the part of the defendant of the amount it admitted to be due.

The court gave the general affirmative charge for the plaintiffs on request in writing upon the agreed statement of facts in the following words:

"The Court charges the jury that if you believe the evidence in this case the plaintiffs are entitled to recover the sum of $3749.08 with interest thereon from April 1, 1930."

"The Court charges the jury that if they believe all the evidence in the case they should not find a verdict for the plaintiffs, on count one of the complaint."

And denied defendant's written requests, as follows:

"The Court charges the jury, that if they believe all the evidence in the case their verdict should be for the plaintiffs only in the principal amount of $1134.97 plus the amount of $59.27, the interest from April 1, 1930, to November 26, 1930, the date of this trial, which two amounts were paid into Court on this November 26, 1930."

"The Court charges the jury that if they believe all the evidence in the case, they should not find a verdict for the plaintiffs on count two of the complaint."

The facts in short are that Mr. Clark entered into a contract with the board of education to construct a school building in the city of Gadsden for the gross sum of $20,175, of which 85 per cent. was to be paid in the installments indicated, and the final payment within ten days after fulfillment and on written certificate of the architect. The board retained the 15 per cent. of the cost of labor and materials for its protection and those who were supplying the same to the contractor. The latter executed bond as provided by statute (General Acts, Reg. Sess., 1927, pp. 37, 38), and appellant was the surety thereon.

The plaintiffs' witness Dupree testified that his firm loaned Clark money to the amount of $650 on November 30, 1929, and it was agreed that he would repay it "out of his next estimate"; so of the loan of $454 to Clark of date of December 7, 1929, though the bill states the date as December 7, 1924. We take the date from the agreed statement of facts as December 7, 1929, the time of the building construction. He stated the "conversation" occurring on delivery of the check on payment by the board, as follows:

"At the time Clark received the $4012 check he had from the architect, Mr. Simpson, an order to the Board for this amount; he turned this check over to me with the request that I get the check. I carried it up to Mr. Donehoo's office in the High School Building on Saturday morning, the twenty first day of December as I recall it, and he gave me this check."

"It was understood by Mr. Clark when he turned this check over to me, that I was to give him the check for $500 for his payroll and additional check for $400 that he wished to use in making a trip to spend Christmas with his family."

"Clark specified that he was to get the $900 before turning the check over to us."

"Yes, it was agreed between he and I, and I had agreed with him he could have this much money out of this check, the balance of the check was to be applied as we had formerly agreed, the cash items that we had advanced him, these checks, and the balance to be applied to the East Gadsden School account for material."

"He stated he wanted to go home and spend the holidays with his family and that he would want $400, that he did not want the $400 at that time, would not want it until Monday or Tuesday when he was ready to leave, and I told him that was all right, just come over at that time and I would give it to him."

Witness was thereupon asked the following question: "At that time you agreed to give him the $400? To which he answered: "Yes sir."

The respective contentions of the parties are declared in the agreed statement of facts, as follows:

"The plaintiffs contend that the defendant has not the right to require them to credit said amount of $3,749.08 with said $2,614.11, and therefore contend that they are entitled to recover said entire amount of $3,749.08.

"The defendant contends that it is entitled to credit for $2,614.11 against said amount of $3749.08 for materials furnished by the plaintiffs on said East Gadsden School job.

"* * * It is also understood that the defendant does not agree to plaintiffs' contention that at the time they received the $4,012 check it was understood and agreed between the plaintiffs and said S. P. Clark that said

two items of $500 and $400 should be paid to the said Clark out of the proceeds of said check for $4,012.

"* * * That the plaintiffs at the time of furnishing material to S. P. Clark and at the time of the receipt of the $4012 check, and at the time of the assignment given them by S. P. Clark, November 30, 1929, knew and were aware that the defendant, the Maryland Casualty Company, was surety on the bond of S. P. Clark for the completion of the East Gadsden School.

"* * * That on the twenty first day of December, 1929, a check in the amount of $4012 was issued by said Board of Education to S. P. Clark, and delivered by Clark to plaintiff, and said check is hereto attached marked Exhibit 'C.' Of this amount the plaintiffs credited to Clark on the East Gadsden School job $1397.89, leaving a balance of $3749.08, the amount which plaintiffs claim to be due at this time by said Clark on the East Gadsden School job, plus interest from April 1, 1930."

The items of credit by cash and goods returned amounted to...... $4,118.15, to which (if added the check of)... 4,012.00

would aggregate................. $8,130.15, and if this sum be deducted from the contract.................... 9,265.32

would leave a balance of........ $1,134.97.

Such is defendant's view as to the amount that was tendered, and interest. The date from which interest was to be calculated is fixed by the agreed statement of facts.

The record shows that appellees advanced several sums of money to Clark in amounts aggregating $2,614.11, and this sum was deducted from the $4,012, leaving the balance of $1,397.89. However, appellees were only credited on the contract price of $9,265.32 with the $4,118.15 (the amount of cash and goods, returned items), and the alleged balance from the board's check of $4,012 (after payment of the $2,614.11), which alleged sum or balance was $1,397.89, thus leaving the alleged balance due of $3,749.08, for which recovery is sought.

Thus was presented the question of a right application of payments—of a credit of the $2,614.11 out of the board's check of $4,012—appellant contending that this sum ($2,614.11) should have been applied on and in the extinguishment of the "labor and material-men's lien" on the East Gadsden School building furnished by appellees (and not to other and individual matters between the parties), and to such extent relieving appellant as Clark's surety for such claims; that is, the sum should not have been applied in the reimbursement of appellees for moneys advanced by them to Clark on the latter's application.

Whatever may be the right of appellant, under the statutes (sections 6488, 6490, Code) or decisions, to transfer a pending cause to the equity docket that it may set up its rights in the nature of subrogation (American Bonding Co. of Baltimore v. Fourth Nat. Bank of Montgomery, 206 Ala. 639, 91 So. 480; Greil Bros. Co. v. City of Montgomery, 182 Ala. 291, 62 So. 692, Ann. Cas. 1915D, 38), it is established that the action of the trial court in overruling the motion to transfer may not be considered, for it has been declared that the right to review an action granting such motion does not extend to the denial of such application or motion. Wiggins v. Stewart Bros., 215 Ala. 9, 109 So. 101; Fountain v. State, 211 Ala. 586, 589, 100 So. 892; Pearson v. City of Birmingham, 210 Ala. 296, 97 So. 916; Claborne v. Nichols, 204 Ala. 282, 85 So. 415. It is further established that, having affirmatively invoked the court to the denial of motion to transfer to the equity side of the docket, the successful party may not in the same action contend that such equitable defense cannot be considered in the trial of the action at law. Having taken the contrary position on the hearing of the motion which was successful—that the equitable defense was available in the trial at law—plaintiffs are bound thereby. McQuagge Bros. Inc. v. Thrower, 214 Ala. 582, 108 So. 450; Harrison v. Harrison, 200 Ala. 379, 76 So. 295; Hodges v. Winston, 95 Ala. 514, 11 So. 200, 36 Am. St. Rep. 241; Caldwell v. Smith, 77 Ala. 157; Hill's Adm'r v. Huckabee's Adm'r, 70 Ala. 183. It follows that under the plea in short by consent the appropriate pleading of appellant set up its rights and defense, and all other proper defenses were made at the trial.

The surety on Clark's bond as a public contractor under bond, conditioned in compliance with the statute (General Acts, Regular Session, 1927, pp. 37, 38, for the faithful performance of the contract, and to "promptly make payment to all persons supplying him or them with labor, material, feed-stuffs or supplies"), has an equity akin to the doctrine of subrogation, in the sums of money due from the board of education under the contract to the contractor as such, and such superior right to said sums, which is superior to the claim of appellees (who had a knowledge of all facts and of the suretyship) when it took the assignment from Clark to secure the repayment of moneys advanced, or to be and which had been loaned to Clark by appellees. Citizens' Bank of Guntersville v. Pearson, 217 Ala. 391, 116 So. 350; Henningsen v. U. S. Fidelity & Guaranty Co., 208 U. S. 404, 28 S. Ct. 389, 52 L. Ed. 547; Prairie State Nat. Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412; First Nat. Bank of Seattle v. City Trust, Safe Deposit

& Surety Co. (C. C. A.) 114 F. 529; County of Wasco v. New England Equitable Ins. Co., 88 Or. 465, 172 P. 126, Ann. Cas. 1918E, 656, L. R. A. 1918D, 732, and note; 21 R. C. L. 1113.

In Calvert v. The London Dock Company, 2 Keene, 638, 644, vol. 15 Eng. Chancery Reports, 639, 644, the master of the rolls said:

"It is said that the performance of the work by Streather was impeded by his want of funds; and that by the advances made to him he was enabled to do more, than he otherwise could have done—and that to assist him, was to assist his sureties; and it was only for the purposes of affording that assistance, that the company did more than they were obliged to do.

"The argument, however, that the advances beyond the stipulations of the contract, were calculated to be beneficial to the sureties, can be of no avail. In almost every case where the surety has been released, either in consequence of time being given to the principal debtor, or of compromise being made with him, it has been contended, that what was done was beneficial to the surety—and the answer has always been, that the surety himself was the proper judge of that—and that no arrangement, different from that contained in his contract, is to be forced upon him; and bearing in mind that the surety, if he pays the debt, ought to have the benefit of all the securities possessed by the creditor, the question always is, whether what has been done lessens that security."

"What the company did, was perhaps calculated to make it easier for Streather to complete the work, if he acted with prudence and good faith; but it also took away that particular sort of pressure, which by the contract, was intended to be applied to him. And the company, instead of keeping themselves in the situation of debtors, having in their hands, one-fourth of the value of the work done, became. creditors to a large amount, without any security; and under the circumstances, I think, that their situation with respect to Streather, was so far altered, that the sureties must be considered to be discharged from their suretyship."

■ The surety on Clark's public improvement bond was conditioned for the faithful performance of the contract and the payment of all claims for labor and materials, and such surety had the right to have payments made by the school board to appellees from the proceeds of the specific contract to be applied in payment for materials furnished under that contract. Appellant was not bound by an application of payments to a demand for moneys advanced by the materialman to the contractor, as shown by the foregoing evidence. See cases collected in

Columbia Digger Co. v. Sparks (C. C. A.) 227 F. 780; United States v. American Bonding & Trust Co. (C. C, A.) 89 F. 925; United States v. Rundle, 107 F. 227, 52 L. R. A 505; Grand Lodge, B. K. A. v. Murphy Const. Co., 152 La. 123, 92 So. 757, 759; 32 Cyc. p. 170; 50 C. J. 105,'§ 178; Ann. Cas. 1915B, 1276, note; Ganley v. City of Pipestone, 154 Minn. 193, 191 N. W. 738–740.

■ The assignment by Clark to appellees of the balance due him on the school contract was subsequent to his assignment to appellant; that is, the assignment to appellees was of date of November 30, 1929, and that to appellant on June 10, 1929, in the application for the bond. And in this respect the appellant has the prior right to said funds and the right to recover the amount thereof, except the amount tendered to appellees by appellant's plea. First Nat. Bank of Gadsden v. Murphree, 218 Ala. 221, 118 So. 404, and authorities cited on this point. That is to say, since the controversy is between the respective parties claimants to the fund from the contract in question, and no rights of innocent third parties having intervened, and all parties knowing the facts, the court will dispose of the controversy on principles recognized in courts of equity as well as law, without the necessity of resort to equitable process. First Nat. Bank of Gadsden v. Murphree, supra.

■ Without prolonging the discussion, it may be said further that it is shown that appellees knew that appellant was Clark's surety on the builder's bond, and knew that the obligation guaranteed payment for labor and material supplied by Clark and that entered into the construction in question; and knew that the contractor's bond did not guarantee the payment of moneys borrowed from third parties by Clark (such as the $2,614.11); knew that the $4,012 check was given by the board of education as the installment due to Clark for and on the construction contract of the school building. With full knowledge of all the material facts, liabilities, and priorities out of which appellant's equities and superior rights arose, appellees could not take the assignment of the check from Clark and out of it reimburse themselves for loans made Clark to the prejudice of the public contract and the priority of the suretyship. An analogy of the right to such proceeds (such as are now the subject of controversy) is to be found in Fidelity & Dep. Co. v. Rainer, 220 Ala. 262, 125 So. 55. In Prairie State National Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 144, 41 L. Ed. 412, Mr. Justice White declared the rule of subrogation, relating to the date of the original contract, to be:

"Under the principles thus governing subrogation, it is clear that, while Hitchcock was

entitled to subrogation, the bank was not. The former, in making his payments, discharged an obligation due by Sundberg, for the performance of which he (Hitchcock) was bound under the obligation of his suretyship. The bank, on the contrary, was a mere volunteer, who lent money to Sundberg on the faith of a presumed agreement, and of supposed rights acquired thereunder. The sole question, therefore, is whether the equitable lien which the bank claims it has, without reference to the question of its subrogation, is paramount to the right of subrogation which unquestionably exists in favor of Hitchcock. In other words, the rights of the parties depend upon whether Hitchcock's subrogation must be considered as arising from, and relating back to the date of, the original contract, or as taking its origin solely from the date of the advance by him. * * *

"To the argument that the extra advances really went into the work, and so inured to the benefit of the sureties, Lord Langdale, M. R., answered as follows (page 644):

"'The argument, however, that the advances beyond the stipulations of the contract were calculated to be beneficial to the sureties, can be of no avail. In almost every case where the surety has been released, either in consequence of time being given to the principal debtor, or of a compromise being made with him, it has been contended that what was done was beneficial to the surety,—and the answer has always been that the surety himself was the proper judge of that,—and that no arrangement different from that contained in his contract is to be forced upon him; and bearing in mind that the surety, if he pays the debt, ought to have the benefit of all the securities possessed by the creditor, the question always is, whether what has been done lessens that security.'"

So, also, in Henningsen v. U. S. F. & G. Co., 208 U. S. 404, 28 S. Ct. 389, 391, 52 L. Ed. 547, 550, Mr. Justice Brewer said: "Henningsen (for we may leave Clive out of consideration) entered into a contract with the United States to construct buildings. The guaranty company was surety on that contract. Its stipulation was not merely that the contractor should construct the buildings, but that he should pay promptly and in full all persons supplying labor and material in the prosecution of the work contracted for. He did not make this payment, and the guaranty company, as surety, was compelled to and did make the payment. Is its equity superior to that of one who simply loaned money to the contractor, to be by him used as he saw fit, either in the performance of his building contract or in any other way? We think it is. It paid the laborers and materialmen, and thus released the contractor from his obligations to them, and to the same extent released the government from all equitable obligations to see that the laborers and supplymen were paid. It did this not as a volunteer, but by reason of contract obligations entered into before the commencement of the work." 17 Roses notes on U. S. Rep. 756.

Such in effect were our cases of Citizens' Bank of Guntersville v. Pearson, 217 Ala. 391, 116 So. 350, and Ætna Ins. Co. v. Hann, 196 Ala. 234, 72 So. 48.

After appellant had paid all the demands for labor and material (except such demands of appellees) out of the $3,694.25 received by appellant from the board of education, the balance remained in its hands. Appellees were not entitled to recover the amount contended for, as the balance due for materials supplied by them, but were entitled to the sum of $1,134.97, which was tendered. These matters should have been litigated between the immediate parties in interest with full knowledge of the facts, according to the foregoing principles of superior right, under the rules of a proper application of payments in the premises, which was not done, as we have indicated.

For the error in instructions given, the judgment is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.