(137 So. 446)

## UNITED STATES FIDELITY & GUARANTY CO. v. BUTCHER et al.

### 6 Div. 716.

Supreme Court of Alabama.

Oct. 29, 1931.

Rehearing Denied Nov. 19, 1931.

Coleman, Coleman, Spain & Stewart, of Birmingham, for appellant.

Stokely, Scrivner, Dominick & Smith, Hugh A. Locke, E. M. Creel, and White E. Gibson, all of Birmingham, for appellees.

**BOULDIN, J.**

The action is by materialmen against the surety on a contractor's bond, given for the faithful performance of a contract made with the board of education of the city of Birming-ham for the construction of a public building known as "Washington School."

The bond, by its terms, secures the payment of claims for labor and material furnished directly to the contractor. General Acts 1927, p. 37.

The one question presented on appeal is whether the surety is entitled to have certain payments made by the contractor to these several materialmen applied in exoneration of the surety pro tanto. Such payments were applied by the debtor, or by the creditor, or by the court under general rules governing application of payments, to other and older bills for materials furnished on other projects.

The source of the fund, the fruits or earnings from the contract whose performance is secured by the bond, is the basis of the equity asserted by appellant.

Assuming for the present that this fund, under the agreed facts, can be treated as coming into the hands of the contractor by payments to him of estimates pursuant to the contract, including the final estimate upon the completion and acceptance of the building, the inquiry is: When funds are paid to the contractor unconditionally pursuant to the terms of a contract to which the surety is a party, is the fund still impressed with an equity in favor of the surety, so that, when such fund is paid to one of the parties secured by the bond, it must be treated as paid on the demand so secured?

Numerous cases in other states, involving varying facts, disclose a lack of harmony in the statement of the rule, and the grounds upon which such equity is or is not recognized.

For a general study of adjudged cases, reference is made to a series of notes in 21 A. L. R. 716–722; 49 A. L. R. 955, 956; 60 A. L. R. 204–206; 50 C. J. 106.

Some cases sustain the broad view that where payment is made with the proceeds or fruits of the contract the bond is given to secure, the surety is not bound by an application of payment to other and different debts held by the materialman secured by the bond. McElrath & Rogers v. Kimmons & Sons, 146 Miss. 775, 112 So. 164, 680; United States v. American Bonding & T. Co. (C. C. A.) 89 F. 925, 930; Sioux City Foundry & Mfg. Co. v. Merten, 174 Iowa, 332, 156 N. W. 367, L. R. A. 1916D, page 1247; Thompson v. Commercial Union Assur. Co., 20 Colo. App. 331, 78 P. 1073; Merchants' Ins. Co. v. Herber, 68 Minn. 120, 71 N. W. 624; 50 C. J. 106; Note Ann. Cas. 1915B, 1276; Note 21 A. L. R. 716.

Other cases strongly challenge the existence of any such equity, even where the source of the fund was known to the party receiving payment if no question of the solvency of the contractor is involved. These cases strongly assert that the obligation of the principal to protect his surety, in the absence of other stipulation, is purely a personal obligation; that, if the fund, when paid over to the contractor unconditionally, is still subject to a trust as regards materialmen, it would be subject to such trust when paid to a stranger with notice of its source. Grover v. Board of Education, 102 N. J. Eq. 415, 141 A. 81; Radichel v. Federal Surety Co., 170 Minn. 92, 212 N. W. 171; Standard Oil Co. v. Day, 161 Minn. 281, 201 N. W. 410, 41 A. L. R. 1291; People, for Use of Hirth v. Powers, 108 Mich. 339, 66 N. W. 215; Meyer v. Cooper, 156 Tenn. 637, 7 S.W.(2d) 38.

The question has been considered for the first time in this court in the very recent case of Maryland Casualty Co. v. Dupre, 136 So. 811, where we have approved the rule that an equity does exist in favor of the surety to have the proceeds of the contract applied to the payment of the demands secured by the bond.

In that case the materialman had knowledge of the source of the fund, but by agreement with the contractor sought to apply the same to another and older demand.

In the present case it is agreed the materialmen had no knowledge of the source of the fund.

The contractor, Charles W. Hall, prior to and during these operations, had but one bank account. At the time he took the Washington School contract and gave the bond, he had three other building jobs in progress. The receipts from these projects, the receipts from the Washington School project, and funds from other sources were deposited in this common bank account. Personal checks on this account were given to pay bills for materials on the several jobs, joint pay rolls for them all, as well as outside obligations. It appears some bills for the Washington School project were paid from this composite bank account before any funds came in from that project.

These several materialmen had furnished material for one or more of the other projects, and the payments made thereon and applied thereto from such fund constitute the payments which the surety now claims the right to have applied to the Washington School account.

Whether by an analysis of the bank account checking over the various deposits and checks it can be ascertained that any particular check paid to one of these materialmen on general account was from funds derived solely from the Washington School project, it is unnecessary to decipher, if knowledge of the source of the fund is essential to the existence of the equity here asserted as against the materialmen.

Keeping in mind that these funds were the funds of the contractor, paid to him in accordance with and in course of the execution of his contract to which the surety was a party, reserving no joint control in their expenditure, it surely cannot be said that as to strangers such funds are held in trust for the benefit of the surety.

The asserted equity seems to rest upon the implied duty of the principal to exercise the utmost good faith toward the surety, and in this particular class of suretyship, wherein a fund arises from the execution of the contract secured, good faith demands that such fund be applied to meet the obligations secured by the bond, if necessary to the protection of the surety, and that materialmen, as parties to the same contract, and secured

by the bond, are under a like duty of good faith.

■ Insolvency of the contractor need not appear. It is sufficient, if action is brought on the bond by the materialman against the surety, for the surety to show the materialman has received such fund with notice of the surety's equity.

■ But the fact that he is secured by a bond for material furnished to a particular job imposes on him no duty to inquire the source of money handed to him on general account. A bond for his protection surely should place him in no worse position than strangers in the collection of other demands, unless he has notice that his debtor is not keeping faith with his surety.

We consider the case of Salt Lake City v. O'Connor, 68 Utah, 233, 249 P. 810, 814, 49 A. L. R. 947, the leading case asserting the doctrine that no such equity exists unless the materialman had knowledge of the source of the fund when he received payment. In that case it was said: "In the public interest commercial transactions should not be fettered. The necessary complications of modern 'business should not be increased by avoidable additions. Money released into trade should be permitted to circulate freely, unburdened by hidden equities or liens. In transactions like the one under consideration, the surety has ample facilities for protecting itself. It may with propriety reserve and exercise a surveillance over the disbursement of the proceeds of contracts for the performance of which it is surety. Materialmen dealing with contractors cannot do so. They cannot, consistent with business proprieties, inquire into the sources of money paid them. When a surety, as in the case at bar, permits money on the contract to be paid the contractor unconditionally, which it must know he may use for general purposes, we see no sufficient reason for sustaining any claim or equity in behalf of the surety, in such money after it has been paid to another in the due course of business. The risk of such a loss is one of the hazards which the surety, for a fixed consideration, assumes by its contract."

■ We conclude the weight of authority and sound reason support the view that when money is paid to a materialman in regular course of business without knowledge of its source, general laws of application of payments govern, and the surety, when sued, cannot demand a reapplication so as to relieve him of the obligations of his bond. People, for Use of Hirth v. Powers, 108 Mich. 339, 66 N. W. 215; Vosburgh v. Middleditch, 214 Mich. 489, 183 N. W. 208; Chicago Lumber Co. v. Douglas, 89 Kan. 308, 131 P. 563, 44 L. R. A. (N. S.) 843; Crane Co. v. Wichita Union Terminal R. Co., 98 Kan. 336, 158 P. 59; Standard Oil Co. v. Day, 161 Minn. 281, 201 N. W. 410, 41 A. L. R. 1291; Crane Co. v. United States Fidelity & G. Co., 74 Wash. 91, 132 P. 872; B. F. Sturtevant Co. v. Fidelity & D. Co., 92 Wash. 52, 158 P. 740, L. R. A. 1917C, 630; Mack v. Colleran, 136 N. Y. 617, 32 N. E. 604; Harding v. Tifft, 75 N. Y. 461; Wanamaker v. Powers, 102 App. Div. 485, 93 N. Y. S. 19; St. Louis Sash & Door Works v. Tonkins, 188 Mo. App. 1, 173 S. W. 47; Meyer v. Cooper, 156 Tenn. 637, 7 S. W. (2d) 38; Radichel v. Federal Surety Co., 170 Minn. 92, 212 N. W. 171; Grover v. Board of Education, 102 N. J. Eq. 415, 141 A. 81.

Any other rule would suspend the application of payments awaiting the contingency of a future breach of the bond. The law, as well as business safety, demands that application of payments be made as received.

If the parties make no application, the law steps in to make it to the advantage of the creditor. If the law make an immediate application, based on facts unknown to the creditor, great confusion would result. The bond, given for the protection of the materialman, would thus become a hazard to him in the interest of the surety who has contracted to protect him.

■ The assignment, made part of the indemnity agreement, covers deferred payments and arrearages and other monies payable to the principal upon default. Here, the principal made no default so far as completion of the building is involved. It was completed by the contractor, accepted, final estimate made, approved, and paid as contemplated by contract. Obviously no retainages nor funds payable existed to which the assignment could attach, if we construe failure to pay all materialmen and laborers as a "default" within the meaning of the contract. The assignment cannot have the force of a joint control arrangement over funds paid unconditionally to the contractor pursuant to the contract. Grover v. Board of Education, supra.

Mr. Hall, the contractor, was killed by accident some six weeks after final settlement with the city. The condition of his estate does not appear, but this is immaterial in the view we take of the case.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.