142 So. 576

UNITED STATES FIDELITY & GUARANTY CO. v. R. S. ARMSTRONG & BRO. (SOUTHERN BANK & TRUST CO., Intervener).

6 Div. 870, 871.

Supreme Court of Alabama.

June 2, 1932.

Rehearing Denied June 23, 1932.

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellant.

Harsh, Harsh & Hare, of Birmingham, for appellee Armstrong.

278

Cabaniss & Johnston and L. D. Gardner, Jr., all of Birmingham, for appellee bank.

**BOULDIN, J.**

The action is against the surety on a contractor's bond for the construction of public improvements under contract with a municipality. Gen. Acts 1927, p. 37.

On September 21, 1927, J. A. Taylor entered into a contract with the city of Birmingham for the construction of sanitary sewers, known as the Collegeville project. Appellant, United States Fidelity & Guaranty Company, became surety on his bond.

Taylor applied to a Birmingham bank, now Southern Bank & Trust Company, to finance him in the execution of the contract. Accordingly, on September 29th, the bank took an assignment in writing of all his rights and interest under the contract, empowering the bank to collect and receipt for each estimate accruing to him. Thereupon the bank made loans to Taylor from time to time for such purpose.

The method of business was to make these loans due and payable on the dates the estimates and payments thereon were to be made by the city. The city, on notice of such assignment, did not approve the assignment as empowering the assignee to receive direct payment, but made the estimates and checks therefor payable to the contractor. But from time to time the bank's messenger accompanied Taylor to receive the check, and in each instance the check went to the bank; whereupon the amount was credited on Taylor's indebtedness, and new notes taken to cover the balance and new loans made for further operations.

In making loans, Taylor was required to furnish the bank with pay rolls and bills for material, but the proceeds were deposited to Taylor's checking account. The bank did not supervise the drawing of checks, and it appears some checks were drawn for salary, office expenses, and payments on equipment, items for which the surety was not liable on the bond, but stated generally to have been in aid of the execution of this contract.

The estimates did not meet the loans made from time to time by the bank. Taylor's debt to the bank grew until on August 25, 1928, he was indebted, speaking in round numbers, about $36,000. The bank called in the local representative of the surety company, and went over the situation with him. Not willing to go on advancing upon the security in hand, the bank arranged to pay materialmen's bills direct and take assignments of same. The surety company was advised of this course of business. No objection was interposed. In this way Taylor was enabled to complete the performance of the contract, the final estimate was made and received by the bank.

The bank had taken assignments of claims for labor, material, and supplies aggregating near $65,000. Meantime, it had also made further loans to Taylor of some $19,000. The moneys received on estimates were applied from time to time to the payment first of the loans, leaving unpaid assigned claims aggregating $54,686.55. The bank, as intervener, sued for this sum. Pending the suit, the contractor died, and the debt was reduced by proceeds of life insurance policies held by the bank as collateral, and judgment rendered for the intervener for the balance of $15,478.-86.

Speaking broadly, the surety company insists that it is entitled to have the moneys received on estimates applied to these assigned materialmen's claims, or at least a sum sufficient to cover the balance due thereon.

One inquiry is: What was the effect of the original assignment by the contractor to the bank of his interest in the proceeds accruing from performance of the contract?

■■ By general rules of law, future earnings under an existing construction contract have such potential existence as to become assignable, like other choses in action, as security for debt. In the absence of statute, the refusal of the city to recognize the assignment would in no way defeat the claim of the assignee as against the assignor. Citizens' Bank of Guntersville v. Pearson, 217 Ala. 391, 116 So. 350; American Trust & Savings Bank v. O'Barr, 12 Ala. App. 546, 67 So. 794; Broadwell v. Imms, 14 Ala. App. 437, 70 So. 294; First Nat. Bank of Gadsden v. Murphree, 218 Ala. 221, 118 So. 404; Wellborn v. Buck, 114 Ala. 277, 21 So. 786; Southern Ry. Co. v. Stonewall Ins. Co., 177 Ala. 327, 58 So. 313, Ann. Cas. 1915A, 987; United States Fid. & Guar. Co. v. First Nat. Bank of Lincoln, 224 Ala. 375, 140 So. 755.

■ It seems indisputable that the contractor could and did make a valid assignment to the bank of his future estimates as security for money advanced, and it was the right of the bank to receive the moneys as they accrued and apply the same to the payment of the debts for which they were pledged, unless the surety has a superior equity in such funds.

This brings us to consider what are the equities of the surety under the facts stated and to be stated.

At the time of executing the bond, and as part of the same transaction, the contractor entered into an indemnity agreement subrogating the surety to all the rights of the principal in case of default on his part as contractor, including an assignment of all arrearages, retained percentage, and sums thereafter payable by way of reimbursement of the surety for his outlays upon default of the principal.

This same form of indemnity agreement and other terms of the contract are set out and considered in Citizens' Bank of Guntersville v. Pearson, supra.

In that case the contractor defaulted, and the surety took over the completion of the contract. The Citizens' Bank had loaned money to the contractor and taken an assignment as security. There were certain funds still due and unpaid from the county upon the completion of the contract. The question was the superiority of the respective claims of the surety and the bank to these funds.

The decision is rested upon the general equitable principles of subrogation, whereby a surety, forced to pay the debt of the principal, is subrogated to the security held by him; and the conditional assignment in the indemnity clause treated, as for such funds, a contractual recognition of the equitable right of subrogation.

Held, this equitable right of subrogation upon the happening of the events entitling the surety to assert it grew out of the contract of suretyship, and related back to the date when such relation was entered into.

The claim of the surety under the assignment and the general law of subrogation was held superior to that of the bank.

Like principles were recognized and applied to similar facts in Prairie State Nat. Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412; Henningsen v. United States Fid. & Guar. Co., 208 U. S. 404, 28 S. Ct. 389, 52 L. Ed. 547, and made the text of 21 R. C. L. p. 1113.

All these cases are cited to proposition 3 of the opinion in our case of Maryland Casualty Co. v. Dupree, 223 Ala. 420, 136 So. 811, 813. What was there said should be read in the light of the authorities there cited. United States Fid. & Guar. Co. v. First Nat. Bank of Lincoln, 224 Ala. 375, 140 So. 755 (4) (6). See, also, Labbe v. Bernard, 196 Mass. 551, 82 N. E. 688, 14 L. R. A. (N. S.) 457.

But we are now dealing with a case where the contractor executed the contract to completion, received his estimates from time to time, and collected the money as per contract. No funds are coming to him; the surety never took over the project nor expended any funds thereon; but it was completed with the aid of the funds advanced by the bank as heretofore outlined.

■ The conditional assignment in the indemnity clause was further considered in our recent case of United States Fidelity & Guaranty Co. v. Butcher, 223 Ala. 606, 137 So. 446, and held to cover deferred payments, arrearages, and other moneys coming to the principal when the surety's rights thereto accrued upon default. That it does not have the effect to pass title to moneys already earned by the contractor and paid over to him in accordance with the contract to which the surety is a party seems obvious. This would be to constitute the contractor a trustee of the moneys received; the surety having a beneficial ownership such as would render any third person who might receive the funds with knowledge of the indemnity contract accountable to the surety. That no joint control is provided, but the money paid over to the contractor as his own, to be spent by him at will, is wholly inconsistent with the idea of a trust effective as against third persons who do business with the contractor. Grover v. Board of Education of Township of Franklin, 102 N. J. Eq. 415, 141 A. 81; Massachusetts Bonding

& Insurance Co. v. Chouteau Trust Co., 264 F. 793 (C. C. A. 8); National Loan & Exchange Bank v. Gustafson, 157 S. C. 221, 154 S. E. 167; Globe Indemnity Co. v. West Texas Lumber Co. (Tex. Civ. App.) 34 S.W.(2d) 896; Fidelity & Deposit Co. v. City of Auburn, 150 Wash. 114, 272 P. 34; Ganley v. City of Pipestone, 154 Minn. 193, 191 N. W. 738.

The authorities just cited strongly support the contention of appellee that the original assignment to the bank under the facts of the instant case passed an equity superior to that of the surety. The last-cited case is quite analogous to the case at bar.

Appellant further relies upon a special equity recognized in our recent cases of Maryland Casualty Co. v. Dupree, 223 Ala. 420, 136 So. 811, and United States Fid. & Guar. Co. v. Butcher, 223 Ala. 606, 137 So. 446.

These cases involve the application of payments made to a .materialman secured by the bond, from moneys derived from the execution of the contract, with knowledge of their source, and recognize an equity in favor of the surety to have such payments applied to debts for material, rather than to outside indebtedness due him from the contractor.

This doctrine, a creature of modern equity jurisprudence, is rested upon grounds stated in the Butcher Case, the special relation of all parties to the common enterprise, and designed to prevent imposition upon the surety by those in favorable position so to do because of their inside position as parties to the undertaking.

These cases do not deal with the right of the contractor to use the moneys received by him in course of the execution of his contract in payment of his obligations to third persons, regardless of their knowledge of the source of such funds, nor with his right to borrow money on the security of such contract, and to make payment of such loans from the funds paid to him in due course.

But appellant argues that, after the bank acquired the materialmen's claims now sued upon, and came into the position of a materialman secured by the bond, it made additional loans to the contractor, and applied funds coming from the execution of the contract to these loans, leaving the bills for material unpaid.

The argument leaves out of account the original assignment as security for such loans, and that they were made in aid of the execution of the contract.

But we need not decide the equities of the parties in this regard because of another feature of the case.

The bank received and credited upon this account from proceeds of life insurance policies a sum largely in excess of these later loans. If the application of payments as made were set aside, and recast by the court, this insurance fund should be applied to the debt not otherwise secured.

■■ Collateral held to secure an entire indebtedness should be applied first to the portion not otherwise secured. Differently stated, if the surety company had paid these materialmen's claims while the insurance policies were still held by the bank, such surety would have no right of subrogation until the entire debt secured by the policies was paid. Porter v. Watkins, 196 Ala. 333, 71 So. 687.

Judgment was properly rendered for intervener, Southern Bank & Trust Company.

Claim of R. S. Armstrong & Bros. Co., Original Plaintiffs.

This claim is for the rental or hire of two air compressor outfits with drills, under written contract with the contractor. The machines were used in the construction work.

■ Claims for rentals of machinery and equipment are within the coverage of such bond. Union Indemnity Co. v. State, for Use of R. S. Armstrong & Bros. Co., 218 Ala. 132, 118 So. 148.

■■ The contracts fixing the agreed rental prices were admissible. They fixed the measure of recovery unless shown to be unreasonable in amount.

■ The evidence fully sustains the conclusion that the stipulated prices were the usual and customary prices for such rentals. Details will not be discussed. Manifestly the extent of deterioration during such use, while evidence upon such inquiry, was not the measure of reasonable rental values.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.