161 So. 101

## WADE et al. v. BRANTLEY & CRAWLEY CONST. CO. et al.

### 4 Div. 777.

Supreme Court of Alabama.

Jan. 31, 1935.

Rehearing Denied May 2, 1935.

Wilkerson & Brannen, of Troy, for appellants.

A. G. Seay, of Troy, for appellees.

FOSTER, Justice.

The bill in this case was filed by simple contract creditors of a partnership composed of Brantley & Crawley to reach and subject funds of that partnership appropriated by the respondent bank to the separate debts

348

of each in about the same amount. It alleges the insolvency of the partnership and of the partners at the time.

■ One aspect of the equity of the bill is dependent upon a principle stated as follows: "A sale and conveyance of partnership property, the partnership being insolvent or in failing circumstances, in payment of the separate debt of one of the partners, to whom the partnership is not indebted, is a fraud upon partnership creditors." Goetter v. Norman, 107 Ala. 585, 594, 19 So. 56, 58; Pritchett v. Pollock, 82 Ala. 169, 2 So. 735.

■■ But if the partnership is not insolvent, the parties who collect their individual debts must have participated in a scheme to defraud partnership creditors if their debts are adequate and bona fide, unless such partnership creditor can enforce the lien which each partner has to require the partnership property applied to partnership debts. Metcalf v. Arnold, 132 Ala. 74, 32 So. 763; Bump on Fraudulent Conveyances, § 369; Wait on Fraudulent Conveyances, § 216; Chandler v. Johnston, 169 Ala. 495, 53 So. 993. But the partner may, and does, by consenting to the appropriation, waive that lien, thereby preventing its enforcement by the partnership creditors. Metcalf v. Arnold, supra; Remington v. Pilcher, 216 Ala. 58, 112 So. 339.

It is claimed that such a transaction is a voluntary conveyance, and is void as to existing creditors for that reason, regardless of solvency, fraud, or intent.

■ We recognize the rule that when a debtor voluntarily (that is, without valuable consideration) conveys his property, an existing creditor can subject it to his debt. Kratz v. Bonner, 228 Ala. 607, 155 So. 77; Waites v. First National Bank, 227 Ala. 684, 151 So. 847; Kuykendall v. Terry, 227 Ala. 227, 149 So. 687; Birmingham Property Co. v. Jackson Securities & Inv. Co., 226 Ala. 612, 148 So. 316.

■ But when a partner uses assets of a solvent partnership with the consent of all his copartners to pay an individual debt, it may be voluntary from the partnership to the partner, but it is not so as to the creditor receiving payment. An existing debt is a valuable consideration for a payment of money. Harmon v. McRae, 91 Ala. 401, 8 So. 548; Steiner v. Lowery, 98 Ala. 208, 13 So. 320; Smith v. Collins, 94 Ala. 394, 10 So. 334; 27 Corpus Juris 543, § 227. And our decisions have fixed the principle that a fraudulent intent is necessary under those circumstances when the partnership is solvent.

The cases cited by appellant (Cannon v. Lindsey, 85 Ala. 198, 3 So. 676, 7 Am. St. Rep. 38, and Bank of Luverne v. Alabama Bank & Trust Co., 217 Ala. 635, 117 So. 219) are not in conflict, since they relate to a situation in which all the partners do not consent to the arrangement.

There is no difficulty about the clear statement of the rule in our cases. When no actual fraud is alleged, the principle does not apply unless the partnership was at the time insolvent or thereby made so. The allegation of insolvency is made in the bill. That is essential to relief, in the absence of fraud. The bill also charges a fraudulent intent, participated in by the bank. So that it shows a right to relief if the allegation of insolvency is proven, or, if not, upon proof of the intent to defraud in which the bank participated, as is alleged, assuming as true the other allegations of the bill.

It also alleges that one or both of the partners consented to the appropriation by the bank of the firm funds to their individual debts to the bank; that if both consented to it, then the transaction was fraudulent and void, and if only one of them consented the other has a lien to which complainants are due to be subrogated. But such lien is waived when both agree to the use of the funds for payment to their individual creditors. Remington v. Pilcher, supra.

The partnership debts to complainants grew out of a road contract with the state, in which they made bond with the Consolidated Indemnity & Insurance Company, as surety, conditioned to pay all such debts as these of complainants by pursuing the statutory procedure. It was on October 23, 1931, that the partners paid to appellee bank $2,500 for one, and $2,464 for the other, partner to be applied on their individual debts to it, and $1,000 for the partnership on a debt due on their secured farm debt. The partnership had recently completed the performance of its state contracts, and been paid, and the amount had been deposited in the bank. They had two such contracts in Alabama, and one in Mississippi. All had been completed and paid for by the states, each respectively. On that day they had in defendant bank $12,324.05, all of which came from the Mississippi project, if that is material.

After the payments, of which complainants complain, they had left on deposit $6,335.22. The debts of complainants were in the aggregate approximately $7,000. They had other assets in Alabama, but all were mortgaged to their full value. They had personal proper-

ty in Mississippi of the value of approximately $8,000 to $9,000, and owed in all about $10,000, including complainants, not secured except by the liability bond. The liability bond was then in full force and effect, with $6,335.22 on deposit in appellee's bank. Was the partnership insolvent on that day, after making the payments sought to be vacated?

■ In a broad sense a debtor is insolvent when his property amenable to legal process is not sufficient to satisfy all his liabilities. Smith v. Collins, 94 Ala. 394, 10 So. 334; Hendon v. Morris, 110 Ala. 106, 20 So. 27; Pelham v. Chattahoochie Grocery Co., 156 Ala. 500, 47 So. 172; 27 Corpus Juris 501; Ala. Cent. Ry. Co. v. Stokes, 157 Ala. 202, 47 So. 336; 32 Corpus Juris 805. This includes all sorts of property that may be taken in mesne process, garnishment, attachment, or execution, Glenn on Fraudulent Conveyances, § 138; 27 Corpus Juris 501, 552, not exempt by law. Pelham v. Chattahoochie Grocery Co., supra.

The partnership had secured a liability bond for the benefit of complainants. On that bond complainants could on that day, and for some weeks thereafter, have sued and secured full payment of their debts. That was therefore an asset subject to legal proceedings for them, and of value equal the debts due complainants and all other claims otherwise unsecured. True, if the surety paid them, the partnership would owe that amount to it, and, therefore, it was indebted to the full amount of those claims. But the obligation of the partnership to the surety to indemnify it was not in the same degree of priority as was the right of complainants to enforce their claim against the surety. It was secondary to complainants. Their financial status as respects complainants was the material inquiry in a suit to enforce their rights, not their status, after complainants are paid. At the close of business on October 23d, the partnership had ample assets to pay all debts of the same primary status as those of complainants, not considering the Mississippi property as an asset.

■■ But assuming otherwise, and that the liability bond should not be so treated, and that it is necessary to take into account the Mississippi property, we think the partnership was nevertheless solvent. The partners resided in Alabama, and their mules and construction equipment were merely temporarily left in Mississippi until some permanent disposition could be made, as we infer from the evidence. They were carried there for that job, and it was just then complete. We may infer a purpose to return the property to Alabama. It did not appear to have a permanent situs in Mississippi. Moreover, the situs of movable personalty is ordinarily the place of the residence of the owner, especially of intangibles. 12 Corpus Juris 470 et seq. The bank had financed the operations of the projects to the extent financing was necessary, both in Alabama and Mississippi. All funds were deposited in appellee bank in the same account. There was a commingling of all the finances, both as to loans from the bank and payments to it and in making its deposits and paying bills. There was no separate financing. But it so happens that all the money which was in the bank on October 23d, out of which the payments were made, which are sought to be vacated, came from the Mississippi project. And all the other free assets of the partnership were then temporarily situated in Mississippi.

Usually the question of insolvency is treated in the text-books as an element of fraud when all the circumstances are considered. So treated, it is important that property be reserved by the debtor which is ample in amount, and so situated that it is easily accessible, considering the facilities of the creditors. In that event, it is sometimes said that the property must be in the state where the debtor resides. Bump on Fraudulent Conveyances, § 259; Price v. Mazange, 31 Ala. 701. But even then, it is not the fact that it is in another state, but its inaccessibility to be subjected to the debts, which is the most important consideration. State lines are not made so much the criterion as the ease of access and the permanency of the situs, and that considered as an element of a fraudulent intent. Moore on Fraudulent Conveyances, p. 275; Baker v. Lyman, 53 Ga. 339; 27 Corpus Juris 552.

■ But when it comes to a sharply drawn issue of insolvency, vel non, not as an element of fraudulent intent, the ease of availability is not stated in the authorities as an element, nor is that of state lines controlling. It is not so defined in any of the authorities except in respect to statutory insolvency proceedings, and as an element of fraudulent intent. The broad definition of insolvency as set out in our cases is practically the same as that in the Uniform Fraudulent Conveyance Act, vol. 9, § 2, p. 171; Glenn on Fraudulent Conveyances, § 134, p. 185.

In the case of Price v. Mazange, supra, the question was whether a mortgage by a merchant on his stock of goods was fraudulent and void at the suit of other creditors. It is

true that in that case it was said that whether the mortgagor was insolvent or in failing circumstances was among the controverted questions. It was also said that evidence that he owned land in Texas was not material evidence. But the question of whether the transaction was fraudulent and void was the inquiry that was involved. The nature of his property and its easy accessibility was important on that inquiry. That seems to be the uniform view upon that question.

We do not think it is contrary to our case of Price v. Mazange, supra, to hold that the Mississippi property should be counted as an asset under the circumstances of this case, considering its easy accessibility, the admixture of the Mississippi operations with those in Alabama, the temporary nature of its presence in Mississippi, and the purpose for which it was used and there held.

With the partnership apparently solvent, leaving over $6,000 in cash to their credit in the bank in Alabama, and personalty worth over $8,000, only owing about $10,000 of unsecured debts, and with a guaranty bond to secure that, we see nothing in the transaction to show an intent to defraud, hinder, or delay the creditors by the partners in consenting to the credit, nor by the bank in collecting it. Smith v. Collins, supra.

The payment of the $1,000 was for a partnership debt. It is immaterial that it was not incurred in the roadwork. Their partnership extended to farming operations. All debts incurred by it whether for roadwork or farming operations were on the same basis as general obligations of the partnership. Appellants had no lien nor priority of right. Copeland v. Kehoe, 67 Ala. 594; First Colored, etc., Church v. W. D. Wood Lumber Co., 205 Ala. 442, 88 So. 433. See, also, United States F. & G. Co. v. Butcher, 223 Ala. 606, 137 So. 446; United States F. & G. Co. v. R. S. Armstrong & Bro., 225 Ala. 276, 142 So. 576; U. S. F. & G. Co. v. First National Bank, 224 Ala. 375, 140 So. 755.

There is nothing to show that there was any intention on October 23d to hinder, delay, or defraud any creditor of the partnership, but it appeared that they could have collected their claims out of its visible unincumbered property by the use of due diligence, and that complainants were fully protected after the transaction of October 23d, as before, and not affected by it. There was left enough cash and other tangible and liquid assets to pay them, and they had the security of the indemnity bond.

The evidence also satisfactorily shows that both the partners agreed that the bank should make the appropriation of funds here sought to be subjected; so that no subrogation exists in favor of the creditors of the partnership.

The decree of the circuit court is consistent with our views, and it is affirmed.

Affirmed.

All the Justices concur.

### On Rehearing.

FOSTER, Justice.

Appellant complains that the opinion did not respond to some of his contentions. One is that the answers are not sufficient, being in the nature of a categorical denial of insolvency, fraud, etc.

This contention would be better supported, if the narrative part of the answer were all. But the bill has an interrogating feature, and defendants are required to answer the interrogatories on oath. The answers to the interrogatories are properly filed as a feature of the answer to the bill. They set out fully the details showing that defendants were not insolvent, where their property is located, in what it consists, all incumbrances and other debts. This is pursuant to rule 9, Chancery Practice. Sims Chancery Pr. § 283. This is not the same as answers to interrogatories under section 6569 et seq., Code; Carmichael v. Pond, 190 Ala. 494, 67 So. 384.

The answers to the interrogatories propounded in the bill should be accorded at least as much effect as are exhibits. They are taken and held as a part of the pleading to which they are attached. Rule 16, Chancery Practice; Grimsley v. First Ave. Coal & Lumber Co., 217 Ala. 159, 115 So. 90. It is rather commendable, we think, not to repeat that which is otherwise clearly alleged in the answer and sworn to.

Appellant has submitted a carefully prepared and well-reasoned theory that there is a lien or trust in favor of materialmen, subcontractors, etc., created by law on the funds paid by the state to a road contractor. The theory would be plausible if there existed, as argued, a specific duty enjoined by law to use those state funds to pay such materialmen and subcontractors. But none is specified. There is no more than the ordinary implied legal duty to pay a debt contracted. The law which requires a bond to secure the claims of such creditors had as one inducement the circumstance that in re-

spect to public works they had no lien either on the property or on the debt due the contractor. Jefferson County Board of Education v. Union Indemnity Co., 218 Ala. 632, 119 So. 837.

The security thus provided for the materialmen also tends to show a purpose to enable the contractor to be free from embarrassment so that without obstruction by them he may assign the account due him by the state to obtain financial aid, or may deposit the funds in bank with other money and be free to operate his business without hindrance from materialmen fully protected by the bond. In fact, we have distinctly held that materialmen have no such claim on the fund as to prevent that sort of operations. United States F. & G. Co. v. R. S. Armstrong & Bros., 225 Ala. 276, 142 So. 576. That is what was done by the contractors in this suit. They hypothecated the claim to the bank, and when the money was collected, paid the bank, after depositing it along with other moneys in their general deposit account. Unless creditors for material, labor, and supplies pursue the statutory remedies, they are remitted to such as are available to simple contract creditors to collect their debts.

Appellant Wade also insists that he has a contract lien on the money paid the partnership by virtue of the road work done by him.

■ The argument is that defendants admitted the allegations of paragraph 3 of the bill, which is supposed to allege facts from which a lien is implied by law in favor of Wade, one of the complainants. It alleges that he "was to receive the contract price for said work less ten per cent. thereof to be retained by the said Brantley and Crawley Construction Company."

But we think those allegations merely serve to fix the amount, not the manner of paying it. It is not a clear statement that payment was to be made out of a certain fund, nor indicated clearly an intention to appropriate the fund to that purpose. It is not within the rule which declares a lien when that is true. 37 Corpus Juris 315; Carroll v. Kelly, 111 Ala. 661, 20 So. 456; Curry v. Shelby, 90 Ala. 277, 7 So. 922; Newlin v. McAfee, 64 Ala. 357; Geddes v. Reeves Coal & Dock Co. (C. C. A.) 20 F.(2d) 48, 54 A. L. R. 282.

■ The bank, however, did not admit those allegations, but alleged that it neither admitted nor denied them. Unless a respondent in equity has, prima facie, special knowledge of facts alleged in the bill, a failure to deny them is not an admission. Burton v. Meeks, 222 Ala. 681, 134 So. 28. So far as the bank was concerned, the burden was by such answer put on complainant to prove paragraph 3, assuming the facts there alleged showed an implied lien.

As to the exact terms of the contract, Wade testified in response to the question, "And they sublet it to you for the same rate for the surfacing and grading less ten per cent. which they were to retain?" A. "Yes, sir." Crawley testified as shown by the following questions and answers:

"Q. What price did you agree to pay him for doing the work? A. My price from the Highway Department less ten per cent.

"Q. That was the price you agreed to pay him? A. Yes sir.

"Q. You would pay him an amount equal to ten per cent. less than the price of that work? A. That is right."

That testimony is not at all clear that there was an agreement to devote the fund derived by the construction company from the road work to the payment of Wade. But it only serves to fix the amount agreed to be paid. Moreover, we do not think the evidence is reasonably satisfactory that the bank had notice of the details of the contract, either actual or constructive. The burden to prove this was on complainant, since it was proven that the bank received an assignment of the claim as collateral security for a larger sum then advanced, which was subsequently paid in part by the use of that fund. Bank of Luverne v. Birmingham Fertilizer Co., 143 Ala. 153, 39 So. 126; Barton v. Barton, 75 Ala. 400; Marsh v. Elba Bank & Trust Co., 207 Ala. 553, 93 So. 604; Patton v. Darden, 227 Ala. 129, 148 So. 806.

There was no occasion for the bank to plead that it was an innocent purchaser for value, since the bill manifests no purpose to charge it on account of any such lien. The purpose of the bill disclosed by its averments and prayer is wholly on the theory treated in the original opinion.

■ Complainant should not have relief for the failure of the bank thus to plead, on the assumption that the general prayer is sufficient, when such theory is not suggested by the allegations nor the special prayer. The court will not permit a bill framed for one purpose to answer for another, to be saved by the general prayer, if the defendant would be taken by surprise and prejudiced by so doing. Sims Chancery Practice, Secs. 288-9; Strange v. Watson, 11 Ala. 324, 336.

**352**

There is no distinct allegation in the bill that the bank received the fund derived from the work sublet to Wade, except by way of a general deposit to the checking account of the construction company. It is not now proposed to reach that deposit in the hands of the bank.

Appellants also renew their contention that the transaction of October 23d constituted a general assignment, and complain that we did not treat their claim in that respect. There was left in the bank over $6,000 after that day's transaction; all subject to the claims of creditors. Appellants' debt aggregated about $7,000. This was not a conveyance of substantially all their property. Section 8040, Code.

Our treatment of the facts and legal principles relating to the solvency of the partnership and fraud in the transaction expresses our views without further elaboration. It is not contended that we have misunderstood the facts.

Application overruled.

All the Justices concur.