# No. 13,505.

## OHIO CASUALTY INSURANCE COMPANY *v.* COLORADO PORTLAND CEMENT COMPANY.

(51 P. [2d] 591)

Decided November 4, 1935.

542

Mr. W. E. CLARK, Messrs. WOLVINGTON & WORMWOOD, for plaintiff in error.

Messrs. BENEDICT & PHELPS, for defendant in error.

*In Department.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error is hereinafter referred to as the Insurance Company, defendant in error as the Cement Company, and the J. F. Roberts & Sons Construction Company as the Roberts Company.

The Roberts Company contracted with the state to build a highway and gave bond, with the Insurance Company as surety, to, inter alia, perform, and pay all persons for material. It bought cement from the Cement Company and failed to pay in full. The latter sued herein on the bond. The Roberts Company made no defense. The plea of the Insurance Company was, in substance, a plea of payment. Trial was to the court and the Cement Company had judgment for the unpaid balance and interest, i. e., $11,696.18. To review that judgment the Insurance Company prosecutes this writ and assigns three errors: (1) A motion to strike was improperly sustained; (2) the findings are against the law and the evidence; (3) the judgment is against the law and the evidence.

1. The Insurance Company pleaded as a defense a certain portion of the application for the bond. This was stricken on motion. The bond contained a provision that nothing in the application ''shall be read into or be a part of this bond, or binding in any way on the obligee herein.'' Hence those portions of the answer were properly stricken.

The Insurance Company also answered that the Roberts Company was engaged in a separate similar project and that an agreement between it and the Cement

Company "applied as well to all moneys made payable by the State of Colorado, under said contract [for said second project] to the defendant construction company," etc.; and made the same allegation, in substance, as to a third project. These were stricken on motion. On these two projects separate bonds with a different surety were executed. We find no reason for bringing them into this litigation unless it be that actions involving them were tried with this and that the findings of the trial court cover all three. Those portions of the answer were properly stricken.

2. We shall not concern ourselves with the "findings" of the court, save to utilize them as a guide to an understanding of its judgment. If the judgment is right it must be affirmed, if wrong it must be reversed, regardless of the "findings."

3. This assignment merely states that "the judgment * * * is contrary to and against the evidence and the law applicable thereto." Our rule 32 requires that "each error shall be separately alleged and particularly specified." This assignment does not comply with the rule. "It is merely equivalent to stating in general terms that the court * * * was wrong in its judgment." *Bitter v. Mouat L. & I. Co.*, 27 Colo. 120, 59 Pac. 403. It covers any possible question involved in the trial and such assignments will not be noticed. *Debevtz v. Ditch Co.*, 78 Colo. 396, 241 Pac. 1111.

Although this sufficiently disposes of the writ we elect to add some further observations. We have examined with care the record, the briefs and most of the authorities cited, and are convinced not only that justice was done by this judgment and that it is supported by the evidence, but that no substantial error in law was committed to the prejudice of the Insurance Company. Its principal argument revolves about that alleged agreement between the Cement Company and the Roberts Company referred to above where we deal with the motion to strike. The Roberts Company maintained a gen-

eral bank account into which went all payments for the three projects and out of which came all expenses of operation. Into this account went also loans, totalling $9,250, made by the Cement Company to the Roberts Company and used, as the trial court found, "almost entirely, if not entirely, in the payment of labor and material bills and overhead expenses of these projects." The Cement Company obtained from the Roberts Company an agreement that all checks on this account should be countersigned by the former's auditor. This was in fact optional with the Roberts Company and was eventually terminated by nothing more formal than its letter to the bank. From this account, meanwhile, the Cement Company's loans were repaid. It is the contention of the Insurance Company that sums for which it was liable to the Cement Company had first claim on this account, that the agreement for countersignature was to its detriment and the advantage of the Cement Company, and that it constituted the latter a trustee which, by reason thereof, owed some duty to the Insurance Company.

██ ██ It is perfectly apparent, as the court found, that the loans were for the benefit of the Insurance Company since they were used to pay claims for which the latter was liable under its bond. Hence in no event could it complain. Moreover, the bank account was the property of the Roberts Company, unincumbered by any kind of trust, and could be used by it as it pleased. *Kane v. First Nat. Bank,* 56 Fed. (2d) 534, 85 A. L. R. 362; *Third Nat. Bank v. Detroit F. & S. Co.,* 65 Fed. (2d) 548; *Standard Oil Co. v. Day,* 161 Minn. 281, 201 N. W. 410.

Assuming that the money paid by countersigned checks was money of the Roberts Company in the hands of its creditor, the Cement Company, the former was first entitled to direct payments; if it failed the latter might exercise its discretion. In no event was the option with the Insurance Company, unless the funds were the identical funds for which it was bound, and they were not. 50 C. J., p. 104, §177. If the Cement Company, or any-

one else, had loaned the Roberts Company all the money used to finance its project, and out of payments received thereon it or its creditor had liquidated the loans, and a balance still remained due for labor and material, the Insurance Company would be liable therefor on its bond.

The judgment is affirmed.

Mr. Chief Justice Butler and Mr. Justice Young concur.