AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA, a corporation, Appellant,

v.

LINE MATERIALS INDUSTRIES, a division of McGraw-Edison Company, a corporation, Appellee.

No. 7451.

United States Court of Appeals Tenth Circuit.

May 25, 1964.

Rehearing Denied June 29, 1964.

Mary C. Walters, Albuquerque, N. M. (McAtee, Toulouse, Marchiondo, Ruud & Gallagher, Albuquerque, N. M., on the brief), for appellant.

Owen B. Marron, of Marron & Houk, Albuquerque, N. M., for appellee.

Before BREITENSTEIN, HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

This action was brought in the court below by the appellant, American Casualty Company, to recover from the appellee, Line Materials Industries, a sum of money paid to it on February 12, 1960. Judgment was entered dismissing the complaint and this appeal resulted.

The facts were stipulated and may be summarized as follows: On August 29, 1959, the appellant surety company, through one of its agents, issued a performance and payment bond to Joseph Bassick, a general contractor doing business as Utilities Service Company. This bond was issued in connection with the performance of a construction contract Bassick had entered into with Garkane Power Association, which provided for the construction of electric power lines. Thereafter and on August 31, 1959, December 14, 1959, and January 30, 1960, the appellant surety company, through the same agent, issued three more performance and payment bonds to Bassick, each of which covered a particular construction project that he had undertaken. During this same period of time, Bassick was also the president of Electric City Supply Company, Inc., a public corporation which had no connection with any of the four construction projects covered by the four surety bonds. It was indebted to appellee, but none of such indebtedness was owed by Bassick either as an individual or under his trade name, Utilities Service Company. Electric City was being pressed for payment of the obligation and, on December 23, 1959, Bassick, individually, executed and delivered to appellee an instrument denominated "Assignment and Declaration of Trust" for the purpose of inducing appellee to forbear enforcement of its claim against Electric City. By this instrument, Bassick obligated himself to apply upon the indebtedness owed by Electric City to appellee certain sums of money that were due or would become due and owing to him, including the remaining balance which would be payable on the Garkane contract. At the time this instrument was executed and delivered, appellee had knowledge of the existence of the surety bond issued by appellant on the Garkane project.

On February 5, 1960, a payment was made by Garkane to Bassick and, pursuant to the forbearance agreement, he paid the sum of $22,161.16 to appellee on February 12, 1960. It should be noted here that there is no evidence in the record to show that on or prior to February 12, there was any default on the part of Bassick as to the Garkane or any of the other three contracts covered by appellant's surety bonds. Similarly, there is no evidence which would establish that, on or prior to that date, appellant had asserted any claim to the unpaid balance due on the Garkane contract.

Bassick did default on all four of the contracts and the appellant surety company was compelled to complete the jobs at a cost of $213,194.74, which includes $10,997.98 on the Garkane project. When it was not reimbursed for these losses, appellant commenced this action to recover the $22,161.16 payment made to appellee alleging that it had a superior right to that sum by equitable subrogation and that appellee held the sum in trust for it by virtue of its superior right.

Appellant contends that, as a completing or paying surety, it has a superior right, by equitable subrogation, to the funds paid by its principal to appellee and that it is entitled to follow those funds into the hands of appellee and impose a trust upon them. Its argument is that, as a subrogee, it is entitled to the contract funds as against any mere assignee of the funds and that this right of subrogation relates back to the date of the execution of the bond. It also appears to argue that, as a subrogee, it is entitled to all of the remedies of the creditors of its principal and has the right to set aside conveyances made by its principal in payment of the debts of a stranger, i. e., Electric City.

It is, of course, true that where a surety on a contractor's bond is required to complete the contract or pay the debts of its principal upon his default, the

surety is entitled to reimbursement for the funds expended or the payments made and, to enforce the right to be reimbursed, it becomes subrogated to the rights of the person it paid and these rights are superior to those of a mere assignee where unpaid contract funds are involved.[1] It is also true that the right of subrogation relates back to the date of execution of the bond.[2] Also, there is authority for the proposition that laborers and materialmen have an equitable right to payment from funds due a contractor on a public improvement in preference to general creditors and that when a surety pays such claims it is subrogated to their rights and is entitled to recover from the funds in preference to any assignment of the funds by the contractor.[3]

■ The trouble is those rules have no application to the factual situation presently before us. In each of the cited cases where they were applied, the unpaid contract funds had been either actually withheld and were still in the hands of the other party to the contract or were in the possession of a court, or had been paid to a creditor of the contractor at a time when the creditor had full knowledge that the contractor was in default and his surety was asserting a claim to such funds. None of these situations are present here. Moreover, it is implicitly recognized in each of the cited cases that the rights of subrogation, even as against a bare assignment without actual payment, extend only to the amount of money unpaid on the contract at the time the contractor defaults and a dispute arises concerning that money. In other words, there is a clear distinction between the right to subrogation, which exists from the date the bond is executed, and actually being subrogated, which occurs when payments are made upon the principal's default.

■ This is simply a case where the owner of a project paid a sum of money due on the contract to the contractor at a time when the contractor was not in default. It was free money and the contractor had the right to use it in any way he chose without it being subject to any claim or equity of his surety.[4] Bassick did use it to pay an obligation that did not arise from his performance of the contract in question. But, he had a legal right to do so as the appellant surety company, at that time, was not subrogated to the rights of anyone concerned with the contract and had no valid claim to the money.

■■ The rule applicable here is succinctly stated in 4 Corbin on Contracts, § 901, p. 609: "As long as the contractor has committed no vital breach, he has a right to payments as provided in the contract; and his assignee will have as good a right to these payments as did the contractor. As long as the contractor is performing as agreed, the owner must pay as agreed; and the surety has no right, by subrogation, that the payments shall be withheld. After breach by the contractor, the situation changes."

1. Pearlman v. Reliance Insurance Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190; United States v. Munsey Trust Company, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022; Henningsen v. United States Fidelity & Guaranty Co., 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547; Prairie State National Bank of Chicago v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412; National Surety Corporation v. United States, 133 F.Supp. 381 (Ct.Cl. 1955), cert. denied, 350 U.S. 902, 76 S.Ct. 181, 100 L.Ed. 793.

2. Prairie State National Bank v. United States, supra; National Surety Corporation v. United States, supra.

3. Martin v. National Surety Co., 8 Cir., 85 F.2d 135, aff'd, 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822; United States Fidelity & Guaranty Co. v. Sweeney, 8 Cir., 80 F.2d 235; United States Fidelity & Guaranty Co. v. City of Bristow, 4 F.2d 810 (E.D.Okla.1925).

4. Kane v. First Nat. Bank of El Paso, Tex., 5 Cir., 56 F.2d 534, 85 A.L.R. 362, cert. denied sub nom., Kane v. Pottorff, 287 U.S. 603, 53 S.Ct. 8, 77 L.Ed. 524; Fidelity & Deposit Co. of Maryland v. Union State Bank of Minneapolis, D.C., 21 F.2d 102; Ohio Casualty Ins. Co. v. Colorado Portland Cement Co., 97 Colo. 541, 51 P.2d 591.

Appellant seeks to set aside the payment made from Bassick to appellee by invoking the New Mexico Uniform Fraudulent Conveyance Act.[5] But, this action was not brought on the theory of a fraudulent conveyance. There is no allegation or proof of the essential elements of a fraudulent conveyance such as intent to hinder, delay or defraud or insolvency on the part of Bassick.[6] Nor is there any allegation or sufficient proof of the commonly accepted badges of fraud such as would establish a fraudulent conveyance.[7]

Affirmed.

5. N.Mex.Stat.Annot.1953, § 50–14–1 et seq.

6. N.Mex.Stat.Annot.1953, §§ 50–14–4, 50–14–7.

7. Royal Idemnity Company v. McClendon, 64 N.M. 46, 323 P.2d 1090.