**FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Plaintiff-Appellant,**

v.

**SCOTT BROTHERS CONSTRUCTION COMPANY et al., Defendants, Alexander City Bank, Defendant-Appellee.**

No. 71-3060.

United States Court of Appeals, Fifth Circuit.

June 9, 1972.

Rehearing and Rehearing En Banc Denied Aug. 15, 1972.

---

James E. Clark, London, Yancey, Clark & Allen, Birmingham, Ala., for plaintiff-appellant.

Allen Poppleton, John Morrow, Birmingham, Ala., William I. Byrd, Alexander City, Ala., for defendant-appellee.

Before WISDOM, THORNBERRY and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

The single issue on appeal of this diversity case involves resolution of the competing claims of a surety and an assignee bank to contract progress payments made in the form of a check payable to the contractor. The check was deposited with the assignee bank just prior to the contractor's default and the surety's undertaking of the contractor's obligation to complete the construction job. The District Court held that the assignee bank was entitled to prevail over the surety. We affirm.

Scott Bros. Construction Co. (Scott) entered into a contract, bonded by appellant Fidelity and Deposit Co. of Maryland (F & D), to build low rent dwellings for the Housing Authority of the City of West Point, Georgia.[1] Subsequent to the execution of the bond, the appellee, Alexander City Bank (the Bank), made a loan to Scott, and Scott gave the Bank a written assignment of the proceeds from the West Point job. On Oct. 9, 1969, the Housing Authority of West Point mailed to the Bank a check for $125,466.00 payable to Scott and representing a progress payment for work Scott had performed pursuant to the construction contract. The next day, Oct. 10, the Bank informed Scott that a portion of the check had been applied to Scott's indebtedness with the Bank and that the balance had been deposited in

---

1. Scott was bonded by F & D for other projects as well. The bonds were substantially identical in terms, and the relationship between F & D and Scott as to all bonded projects was prescribed by a general "Agreement of Indemnity."

Scott's account. Also on Oct. 10, Scott drew a $15,000 check on the account. At about 5:00 p. m. of the same day Scott, after consultation and agreement with a representative of F & D, mailed a default letter to the Housing Authority stating that F & D, under the bond, was taking over the West Point job.

Later that evening the Bank's executive vice-president learned of Scott's default through a conversation with a partner in the Scott firm. Early the next morning the Bank's officers declared Scott's indebtedness due and payable and set off against the outstanding debt the balance of Scott's account, or $71,247.60, the fund to which the Bank and F & D now assert competing claims.[2] At the time of setoff, however, the Housing Authority's check had been sent out for collection by the Bank but had not yet cleared the Authority's bank in West Point, Georgia.

■ The District Court, in resolving the issue, correctly perceived and followed the distinction between, on the one hand, retainages and earned but unpaid progress payments and, on the other hand, progress payments that already have been paid before the contractor defaults. As to the former category of contract funds a surety enjoys a claim superior to that of an assignee bank, whereas the bank's rights take priority of the surety's as to contract payments made before default. *See* National Shawmut Bank of Boston v. New Amsterdam Cas. Co., 411 F.2d 843, 848 (1st Cir. 1969); Trinity Universal Ins. Co. v. United States, 382 F.2d 317, 320 (5th Cir. 1967). *Compare* Citizens Bank of Guntersville v. Pearson, 217 Ala. 391, 116 So. 350 (1927), *with* United States

Fidelity and Guaranty Co. v. R. S. Armstrong & Bros., 225 Ala. 276, 142 So. 576 (1932).

■ The distinction reflects the theory that a surety "is not only a subrogee of the contractor, . . . but also a subrogee of the [owner] and entitled to any rights the [owner] has to the retained funds." *Trinity Universal, supra,* 382 F.2d at 320. "But for the surety's completion of the work, the obligee on the bond, be he owner or prime contractor, would have been entitled to apply the funds against the cost of completion. It is the surety's performance which frees the funds, and, . . . the surety is entitled to them." American Fire & Cas. Co. v. First National City Bank of N. Y., 411 F.2d 755, 758 (1st Cir. 1969). *See also* Lloyd Wood Construction Co. v. Con-Serv, Inc., 285 Ala. 409, 232 So.2d 649, 654–655 (1970). Any payments made by the owner prior to default, however, are attributable to the contractor's performance, not the surety's, and the owner, to whom the surety becomes subrogated, may not rightfully withhold such payments so long as the contractor is in material compliance with its obligations under the contract. American Cas. Co. of Reading, Pa. v. Line Materials Indus., 332 F.2d 393, 395 (10th Cir. 1964). No contention is made that Scott had not satisfactorily performed the work for which the Oct. 9 check was intended as payment.[3] We hold, therefore, that the Bank's claim to the funds in question is superior to F & D's.

In determining F & D's and the Bank's relative rights to the fund, the delay in actual collection of the check from the drawee bank until after the

---

2. Scott's default extended to the other projects bonded by F & D and gave rise to additional issues in the District Court proceedings below. The only part of those proceedings before us on appeal, however, is the dispute between F & D and the Alexander City Bank over their rights to the proceeds of the Oct. 9 check remaining in Scott's account with the Bank when the setoff occurred on Oct. 11.

3. The suggestion by F & D that Scott declare default appears to have sprung from its assessment that Scott's cash position was growing tight and that laborers and materialmen inevitably would go unpaid unless the surety took over. Thus we do not decide the question of relative rights in a circumstance where the owner has dispatched a check paying for work by the contractor that materially departed from his obligations under the contract.

declaration of default on Oct. 10 is of no consequence. Kane v. First National Bank of El Paso, Tex., 56 F.2d 534, 535 (5th Cir. 1932).[4] The verbal distinction between "paid" and "unpaid" progress payments is simply a way of expressing the different priority of rights to funds freed by the surety's performance and to funds freed solely by the contractor's performance. The progress payment represented by the Oct. 9 check falls into the latter category.

What F & D fails to accomplish by emphasizing its position as subrogee of both Scott and the Housing Authority cannot be achieved under any theory of constructive trust. The existence of a constructive trust presupposes a superior right in F & D, but F & D had no such right in this payment for Scott's past performance. Similarly inapplicable is the rule of some cases, summarized at 8 A.L.R.3d 235, 249, that a bank may not apply a depositor's funds against the indebtedness he owes the bank when someone other than the depositor has an interest in the funds, even though the bank has no knowledge of the interest. For here the check was deposited "unincumbered," and "[n]o wrong is done to the contractor's surety in recognizing the contractor's full title to such checks by taking them on deposit with all the consequences ordinarily attaching to such deposit." Kane v. First National Bank of El Paso, Tex., *supra,* 56 F.2d at 536.

Only one further point deserves mention. From Sept. 26 until the day of declaration of default, Oct. 10, a representative of F & D was in contact with Scott concerning Scott's ability to complete its pending jobs and to pay its laborers and materialmen. F & D urges that the Oct. 10 notice merely acknowledged a situation that already existed in fact, that Scott's financial capabilities surely were no better on Oct. 9 than on Oct. 10, and thus that "default" truly occurred prior to Oct. 10, so F & D's obligation to perform under the bond and its rights to contract funds became choate before the Bank received the check. The difficulty with this approach is that it proceeds from the wrong point of view and consequently mistakes what initiates a surety's obligation—and rights—under its bond. From an omniscient perspective, Scott might be said to have begun months before Oct. 10 on an inexorable course ending in inability to complete its work. Or even to F & D's representative, who consulted with Scott beginning on Sept. 26, Scott's fatal financial condition might have been evident several days before Oct. 10. What matters, however, is that F & D had no obligation to begin performance under its bond with Scott, and thus no rights to contract payments as subrogee, until Scott either stated that it could no longer continue on the job or until Scott materially failed in its performance. *See* American Cas. Co. of Reading, Pa. v. Line Materials 'Indus., *supra.* Since Scott's performance of the West Point job is not contended to have been unsatisfactory, F & D is remitted to the declaration of default as a means of invoking its rights as subrogee, and the declaration was made on Oct. 10, after the Bank received the check.[5]

Since the District Court correctly determined that the Bank had a superior claim to the funds in dispute, the judgment is affirmed.

4. In *Kane,* as here, a progress payment check was received by an assignee bank prior to the contractor's default, but the check did not clear the drawee bank until after default. The court held that the assignee bank's claim to the proceeds of the check was superior to the surety's.

5. For its position concerning when default occurs F & D relies upon language in Royal Indemnity Co. v. United States, 371 F.2d 462, 178 Ct.Cl. 46 (1967), but that case supports our conclusion. While *Royal Indemnity* does state that "[a]ll that is necessary for the surety to prevail is that the contractor be in default as a matter of fact;" the next clause expresses as a condition to the surety's rights that it "has become obligated to pay under its . . . performance bond." *Id.* 371 F.2d at 464.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.