366 So.2d 813 (1979)
NEWKIRK CONSTRUCTION CORPORATION, a Georgia Corporation, Appellant,
v.
GULF COUNTY, Florida, a Political Subdivision of the State of Florida, and Dependable Insurance Company, Inc., a Florida Corporation, Appellees.
No. II-191.
District Court of Appeal of Florida, First District.
January 11, 1979.
Rehearings Denied February 19, 1979.
*814 Cecil G. Costin, Jr., Port St. Joe, for appellant.
William J. Rish, of Rish & Witten, Port St. Joe, for appellee Gulf County, Florida.
Rowlett Bryant, of Bryant, Daniel, Thompson & Kurvin, Panama City, for appellee Dependable Ins. Co., Inc.
ERVIN, Judge.
Newkirk Construction Corp. appeals from the lower court's final judgment of interpleader which permitted Gulf County to interplead as defendants Newkirk and its surety, Dependable Insurance Company.
Newkirk and Gulf County contracted for Newkirk to build a water distribution and sewage collection system. The county was required by the contract to make progress payments for completed work at a rate of 90% of the earned estimate. Newkirk was the principal on Dependable's performance bond in favor of the county. In June, 1977, after Newkirk had commenced construction, Dependable sent a letter to the county enclosing a letter from Newkirk. Newkirk's letter read:
"This letter is to advise you that my company is working very closely with Dependable *815 Insurance Company, surety under the above-mentioned bond, due to difficulty on another project, and this is my written consent for you to make all checks jointly payable to Dependable Insurance Company, Inc., and Newkirk Construction Corporation."
Dependable's letter advised that Newkirk had made an irrevocable assignment of progress payments to Dependable. After the county had made one joint progress payment for about $33,000, Newkirk informed the county it was rescinding its earlier letter and requested that future payments be made only to Newkirk. The county refused. Later Dependable refused to endorse the checks made payable to both it and Newkirk and returned them to the county instead. Newkirk terminated its contract with the county, stating it was unable to continue construction without the progress payments.[1] The county filed an action for interpleader, alleging that it owed either Dependable or Newkirk approximately $42,000. The lower court found that Newkirk and the county had amended their contract as to the manner in which progress payments were to be made and entered the judgment of interpleader.
We agree with Newkirk that the record does not support a finding that its contract with the county was amended. Modifications of contracts must be supported by new consideration as well as the consent of both parties. Moreover, a party who alleges a contract has been modified has the burden of proving it. 7 Fla.Jur., Contracts, §§ 169, 234. The county failed to show that the construction contract was modified or amended. Newkirk never characterized its letter as an amendment to the terms of the contract. The letter stated simply that Newkirk consented to payments being made jointly to both it and Dependable. At most, the letter did not involve any change in the ownership of progress payments but was simply Newkirk's direction as to the manner in which the payments were to be disbursed. Dependable's assertion that the letter was an irrevocable assignment does not affect the contract between Newkirk and the county. Thus, when Newkirk later requested that it be paid directly, the county was under no obligation to anyone other than Newkirk, the party with which it had contracted.
We also conclude that interpleader was not proper in this case because, absent an amendment to the construction contract for the benefit of Dependable, the county failed to show that Dependable had any possible claim against it for progress payments. Fla.R.Civ.P. 1.240 provides in part:
"Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability."
The rule clearly states that it is only those persons having claims against the plaintiff who may be joined as defendants in an interpleader action. At the time the county filed its action in interpleader, Newkirk was not in default, nor was there any allegation that it was so. Moreover the performance bond between Newkirk as principal and Dependable as surety permitted the surety, only after its principal's default, to remedy the default and complete the contract. As a result, any right which Dependable had against the county arose after default and upon its subrogation to Newkirk's contractual rights through its performance. As stated in Corbin On Contracts, § 902 at p. 609: "As long as the contractor has committed no vital breach, he has a right to payments as provided in the contract * * *. As long as the contractor is performing as agreed, the owner must pay as agreed; and the surety has no right, by subrogation, that the payments shall be withheld. After breach by the contractor, the situation changes."
*816 Progress payments for work already performed by the contractor are wholly the property of the contractor since no right arises in the surety until it comes in and performs following the contractor's breach. See Fidelity and Deposit Co. of Md. v. Scott Brothers Construction Co., 461 F.2d 640 (5th Cir.1972); Aetna Casualty and Surety Co. v. Atlantic National Bank of West Palm Beach, 430 F.2d 574 (5th Cir.1970); Kane v. First National Bank of El Paso, Tex., 56 F.2d 534 (5th Cir.1932). In the latter case, the court stated:
Money or checks paid to [the contractor] as the work progresses are the property of the contractor unincumbered by any trust, just as are payments to others for goods manufactured or services performed. 56 F.2d at 535.
While interpleader may be invoked when a party is or may be exposed to multiple liability and fears the threat of litigation, A/S Krediit Pank v. Chase Manhattan Bank, 155 F. Supp. 30 (S.D.N.Y. 1957), there must be a bona fide fear of exposure to double liability at the time interpleader is sought. John Hancock Mutual Life Insurance Co. v. Beardslee, 216 F.2d 457 (7th Cir.1954); Fulton v. Kaiser Steel Corp., 397 F.2d 580 (5th Cir.1968); Am. Fidelity Fire Ins. Co. v. Construcciones Werl, 407 F. Supp. 164 (D. Virgin Islands, 1975). In Bierman v. Marcus, 246 F.2d 200, 202 (3d Cir.1957), the court, in dismissing a federal interpleader action under Fed.R.Civ.P. 22,[2] stated, "While the stakeholder is not obliged at his peril to determine which claimant has the better claim, he must have some real and reasonable fear of exposure to double liability or the vexation of conflicting claims." Obviously there can be no valid fear by Gulf County of exposure to conflicting claims to progress payments owed by it to Newkirk for work the latter had already performed.
Dependable also argues that the lower court's finding that the construction contract was amended is interlocutory and not reviewable at this time. However, the lower court's judgment of interpleader, though interlocutory to Newkirk and Dependable, was final to the county and appealable as such by all the parties. See Miller v. Gulf Life Insurance Co., 148 Fla. 1, 3 So.2d 519 (1941), and Berkan v. Brown, 231 So.2d 871 (Fla. 3d DCA 1970).
We conclude, in the absence of default by the contractor, the county had no bona fide threat of exposure to suit by the surety. It was therefore improper for the interpleader action to proceed.
REVERSED.
McCORD, C.J., and MELVIN, J., concur.
NOTES
[1] The termination was made pursuant to § 18.5 of the general conditions of the contract, which permitted the contractor to terminate, if through no fault of his own, the owner, after a time certain, failed to pay the contractor pursuant to the conditions of the contract. Neither the county nor the surety argues that Newkirk's termination constituted a default.
[2] The federal rule is practically identical to Fla. R.Civ.P. 1.240. Cases interpreting the federal rule are persuasive in cases arising under the Florida rule. 18A Fla.Jur., Interpleader, § 12 at p. 404.