**In re STEVE A. CLAPPER & ASSOCIATES OF FLORIDA, Debtor.**

**Capitol Indemnity Corporation, Plaintiff,**

**v.**

**Thomas S. Heidkamp, Trustee in Bankruptcy for Steve A. Clapper & Associates of Florida, Defendant.**

**Bankruptcy No. 99–13102–9P7. Adversary No. 00–438.**

United States Bankruptcy Court, M.D. Florida, Ft. Myers Division.

June 19, 2001.

Gregory P. Brown, Tampa, FL, for plaintiff.

Michael R. Whitt, Ft. Myers, for defendant.

### ORDER ON MOTION FOR REHEARING OR RECONSIDERATION

ALEXANDER L. PASKAY,
Bankruptcy Judge.

In this Chapter 11 case the matter under consideration is a Motion for Rehearing or Reconsideration, filed by Capitol Indemnity Corporation (Capitol). The Motion is filed in the general case and technically was directed to an Order entered by this Court allowing a secured claim and determining the right to distribution of Claim No. 78 filed by Capitol. On April 5, 2001, this Court entered an Order granting the Motion for Reconsideration (Doc. # 256 in Main Case and Doc. # 14 in above-captioned Adversary) and vacating the Order Allowing Secured Claim and Determining the Right to Distribution (Doc. 243). The Order further provided that the issues raised by the Order determining the right to distribution of Claim No. 78 shall be deferred pending the outcome of the above-captioned adversary proceeding.

The Complaint filed by Capitol on July 17, 2000, sought an order compelling the Trustee to turn over certain funds which, according to Capitol, are not properties of the estate, thus not subject to a turnover pursuant to Section 542 of the Code. The claim in Count I involved the funds relating to a construction project described as Force Main Project, or the Manatee County Contract. It is based on allegations that the Trustee is currently holding the sum of $95,702.04 and, according to Capitol, these funds are not property of the estate. Therefore, Capitol is entitled to

the funds held by the Trustee, which should be turned over to Capitol.

The Claim in Count II relates to funds involved in the Harbor Boulevard Project, or the Charlotte County Contract, and is based on the allegation that the sum of $80,324.00 was paid to the Trustee and these funds are also subject to turnover to Capitol because they are not properties of the estate.

This Order is limited to the Claims in Counts I and II of the Complaint. Not dealt with is the claim in Count III, which is a suit for Declaratory Relief in which Capitol seeks a determination by this Court that in a certain adversary proceeding commenced by the Trustee against Phillip Kurt Maenner, Adversary Proceeding No. 00-67, in which the Trustee seeks to recover the payments made to Maenner as an avoidable preference, that these funds are also not property of the estate. And if and when these funds are to be recovered by the Trustee, they should be turned over to Capitol.

In due course, the Trustee filed a denial in his Answer to the claims asserted by Capitol but also pled affirmative defenses to the effect that the funds in question represented contract payments earned by Steve A. Clapper and Associates of Florida (Debtor) while the Debtor was still in a Chapter 11 reorganization case. Therefore, the funds are property of the Estate under Section 541 of the Bankruptcy Code.

On January 10, 2001, Capitol filed a Motion for Summary Judgment, and on the same day, the Trustee also filed his Motion for Summary Judgment as to the claims set forth in Count I and II of the Complaint. Both parties contend there are no genuine issues of material facts and each is entitled to a judgment in their respective favor as a matter of law.

On February 20, 2001, this Court, after having reviewed the submission of the parties and heard argument of counsel, entered an order and denied both Motions for Summary Judgment and rescheduled the adversary proceeding for a pretrial conference for the purpose of preparing the controversy for trial. Although the Motion for Reconsideration was not addressed directly to the Order which denied the Motions for Summary Judgment, it did so indirectly by seeking a reconsideration of the Order allowing the secured Claim No. 78 of Capitol and determining the right to distribution. On April 5, 2001, this Court entered an Order granting the Motion for Rehearing or Reconsideration (Doc. # 256 in the Main case and Doc. # 14 in the above-captioned Adversary). Upon reconsideration of the Order denying both Motions for Summary Judgment (Doc. # 13), this Court now finds and concludes as follows.

In order to put the controversy in the proper posture, a recap of the relevant facts as they appear from the record and particularly from the Joint Stipulation of Facts filed by the parties can be summarized as follows.

At the time relevant, Steve A. Clapper & Associates of Florida, Inc. (Debtor) was engaged in the business of underground utility construction performing mostly subterranean piping and site work, primarily for public construction projects. Capitol is the bonding company and was the surety on the payment and performance bonds on several construction projects of the Debtor in the State of Florida. Particularly, Capitol was the surety on the payment and performance bonds issued on both the Manatee County Force Main $14/15$ D project, and the Charlotte County–Harbor Boulevard project.

On August 25, 1998, the Debtor executed the General Indemnity Agreement

(GIA) (Exh. A). Section 11 of the GIA Agreement states:

**Right of Surety to have Principal treated as trustee and contract funds treated as trust funds.** It is understood, agreed and hereby expressly declared that all monies due or to become due under the contract or contracts covered by such bond or bonds are trust funds, whether in the possession of the Principal or otherwise, for the benefit of and for payment of all obligations for labor and material furnished in connection with such contract or contracts *for which the Surety would be liable under said bond or bonds;* and which said trust also inures to the benefit of the Surety for any liability and loss it may have or sustain under said bond or bonds; and this agreement and declaration shall also constitute notice of such trust.

(emphasis added).

On January 5, 1999, the Debtor entered into a contract with Manatee County pursuant to its bid no. 98–5358–DC, for water main rehabilitation in the Palma Sola area in Manatee County, Florida. The total contract price for this project was $982,640.80. As a result of agreed change orders, the original contract was reduced by $35,584.91. It is without dispute that Manatee County paid the Debtor $523,029.32, leaving a contract balance of $424,070.57.

On August 11, 1999, the Debtor filed its Voluntary Petition for Relief under Chapter 11. On August 17, 1999, this Court entered an Order and authorized the Debtor–in–Possession to continue to operate its business. At the time of the commencement of this case the Force Main project was not yet completed. On September 30, 1999, the Debtor–in–Possession (DIP) submitted a payment application to Manatee County seeking a payment in the amount

of $95,702.04 for work performed on the Force Main Project between May 15, 1999 up to including September 30, 1999. The requested payment (Exh. B) was accompanied by a certificate by the Debtor that the work for which payment was sought was completed. Based on the submission by the Debtor, Manatee County had accepted the request for payment.

It appears that on October 21, 1999, Manatee County declared a default by the Debtor and terminated the Debtor's right to complete the project. (Exh. D.) The Debtor had not been able to proceed with its Chapter 11 case; the case was converted on November 17, 1999, to a Chapter 7 liquidation case. In due course, Thomas S. Heidkamp was appointed the Trustee for the estate of the Debtor. It is without dispute that on March 31, 2000, Manatee County paid to the Trustee the amount of $95,702.04, the amount requested by the Debtor on September 30, 1999, for work performed on the project between May 1, 1999 and September 30, 1999, or prior to the conversion of the Chapter 11 case to a Chapter 7 case. The Trustee is currently holding this sum in escrow pending a resolution of the claim to the funds in this adversary proceeding.

It is stipulated by the parties that Capitol paid $595,799.59 on its payment and performance bond obligations the following subcontractors:

a. Rental Service Corporation—$2,884.56 on March 1, 2000;

b. APAC, Inc.—$64,471.01 on January 12, 2000;

c. SMR Aggregates—$2,368.23 on January 4, 2000;

d. Hughes Supply—$224.194.32 on December 2, 1999;

e. Forsberg/Manatee County—$301,881.47 on April 18, 2000.

The Affidavit of Andy Anderson (Exh. E) filed in support of Capitol's Motion for Summary Judgment includes detailed schedules and relevant correspondence in support of its entitlement to the funds. It is also stipulated by the parties that the claims filed in this case by several subcontractors and suppliers are true and accurate and are still due and owing and outstanding. There is no dispute that there is an outstanding contract balance owed on the Force Main project of $328,368.58 representing unearned contract proceeds and retainage under the Manatee County contract which was paid toward completion of the project.

The controversy also involves the Charlotte County contract referred to as the Harbor Boulevard project, which is a claim asserted in Count II of the Complaint. The Joint Stipulation of the Parties also set forth numerous relevant facts concerning this project which are as follows:

On January 25, 1999, the Debtor entered into a contract with Charlotte County for the installation of a force main at Harbor Boulevard and U.S. 41 in Charlotte County, Florida. The original contract price was $376,898.50 and with approved change orders the price increased to $395,236.50. It is without dispute that the Debtor received prior to the commencement of the Bankruptcy $230,031.51. As noted earlier, on August 11, 1999, the Debtor filed its Petition for Relief under Chapter 11 and continued to operate its business as a Debtor–in–Possession.

On September 24, 1999, the Debtor–in–Possession submitted a payment requisition to Charlotte County for work done between July 17, 1999, and September 3, 1999, in the amount of $78,990.53. (Exh. F) The work set forth on the payment application was completed by the DIP and was certified by Charlotte County as being complete and accepted by Charlotte County. The DIP was not able to continue to operate its business and as a result on October 8, 1999, Charlotte County declared a default of the contract and terminated its contract with the Debtor. Charlotte County employed a replacement contractor who ultimately completed the project and was paid directly by Charlotte County $38,920.00 out of the remaining contract proceeds. It is without dispute that on January 24, 2000, Charlotte County paid the Trustee $80,324.00 pursuant to the request for payment submitted September 24, 1999, which sum also is kept in escrow by the Trustee pending outcome of this litigation.

It is without dispute that pursuant to the payment of the performance bond, Capitol paid on the Harbor Boulevard project a total of $137,459.08 to the following subcontractors and suppliers:

a. Sentry Barricades—$10,250.61 ($5,361.40 on March 14, 2000 and $4,889.21 on October 27, 1999);

b. SEMSCO—$32,756.86 on March 14, 2000;

c. Other Side Sod—$3,792.00 on March 2, 2000;

d. Charlotte Co. Mining—$2,412.31 on December 10, 1999;

e. Hughes Supply—$11,144.92 on December 2, 1999;

f. Communications by Poire, Inc.—$9,567.70 on November 3, 1999;

g. W.C. Roese Contracting—$48,209.43 on November 1, 1999;

h. Coast Construction—$13,358.00 on October 12, 1999;

i. John Bunch Concrete—$4,047.75 on October 12, 1999;

j. King Excavating—$1,920.00 on October 12, 1999.

Capitol also attached to its Motion for Summary Judgment the Affidavit of Andy

Anderson together with the copy of all documentation relating to this project. The parties agreed that the documents attached as Exhibit I are authentic, including the Stipulation that all the dates in the subcontractors and suppliers proofs of claim filed are true and accurate.

It its Motion for Summary Judgment, Capitol states that as Clapper's surety on the vast majority of Debtor's bonded jobs, it has satisfied nearly one million dollars in payment and performance bond claims. Because its payments on the Manatee and Charlotte County far exceed the amount of the Disputed Funds, Capitol has a paramount right to those funds and is entitled to summary judgment as a matter of law on Counts I and II.

Capitol's Motion for Summary Judgment further states that Paragraph 11 of the GIA makes all funds paid to Debtor on the Projects trust funds for the benefit of the surety and those permitted to make claims under the bonds. It seeks Manatee County disputed funds of $95,702.04 as a minimal offset to its bond payments and claims a superior interest in these funds based upon equitable subrogation rights. Like the Manatee County project, Capitol also requested summary judgment in the amount of $80,324.00 for the amount of disputed funds on the Charlotte County project under its equitable subrogation rights.

In contrast, in his Motion for Summary Judgment, Trustee states that he is entitled to judgment as a matter of law since the disputed funds are property of the bankruptcy Estate under section 541 of the Bankruptcy Code which includes all legal and equitable interests of the debtor in property as of the commencement of the case. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). That under 11 U.S.C. § 541(a), funds due and owing to a debtor

as of the date of commencement of the case, even if unpaid, represent a chose of action of the debtor which is property of the estate. *In re G & R Builders, Inc.*, 123 B.R. 654 (Bankr.M.D.Fla.1990).

These are basically the uncontested facts which are relevant to the contention of the parties. This Court is satisfied that upon reconsideration, it is appropriate to dispose of the claims raised in Counts I and II as a matter of law without a need for a trial.

In support of its Motion for Summary Judgment, Capitol primarily relies first on the provisions of its General Indemnity Agreement and second, on the doctrine of equitable subrogation.

■ In support of its positions Capitol cites *Pearlman v. Reliance Insurance Co.*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962). In *Pearlman,* the dispute under consideration was over the remaining undisputed contract proceeds and the contract of retainage after a contractor filed bankruptcy. The contractor failed to pay laborers and materialmen, and the surety was forced to pay $350,000 to discharge the contractor's debts. The surety claimed that it was entitled to the funds withheld by the owner in the amount of $87,737.35.

In considering the dispute between the Trustee and the Surety, the Supreme Court held that "the laborers and materialmen had a right to be paid out of the fund; that the contractor, had he completed his job and paid his laborers and materialmen, would have become entitled to the fund; and that the surety, having paid the laborers and materialmen, is entitled to the benefit of all these rights to the extent necessary to reimburse it. Consequently, since the surety in this case has paid out more than the amount of the existing fund, it has a right to all of it." *Pearlman,* 371

U.S. at 141–42, 83 S.Ct. 232. Based on this, the Court held that under the doctrine of equitable subrogation, the funds were not property of the estate and the Trustee was not entitled to the remaining funds not yet disbursed. Relying on *Pearlman,* Capitol asserts that its position is also supported by additional authorities, particularly the case decided by this Court, *MCA Ins. Co. v. Genson (In re Caddie Constr. Co.),* 125 B.R. 674 (Bankr.M.D.Fla. 1991).

In *Caddie,* this Court, relying on *Pearlman,* concluded that when the contractor defaulted on the contract, the surety who completes the performance of a contract is entitled to recover the balance of the contract price "free from setoff." *In re Caddie Constr. Co.,* 125 B.R. at 678 (citing *Aetna Casualty & Sur. Co. v. United States,* 435 F.2d 1082 (5th Cir.1970), and *Trinity Universal Ins. Co. v. United States,* 382 F.2d 317 (5th Cir.1967)). The Court in *Caddie* also concluded that in addition, under the principle of equitable subrogation, one who has the liability to pay the debt of another and does so is in equity entitled to the security or obligation held by the creditor whom he has paid. *Id.*

In opposing the position advanced by Capitol and its own Motion for Summary Judgment, the Trustee concedes that *Pearlman* and its progeny clearly support the proposition that the surety who completes a construction job of the Debtor which was bonded by the surety after default is entitled to the unpaid monies of the contract proceeds. The Trustee also agrees that the doctrine of equitable subrogation is a valid doctrine and clearly must be taken into consideration when warranted by the facts. But that is the extent of the concessions by the Trustee with regard to the propositions urged by Capitol, and, according to the Trustee, the

facts in this case should produce a different result.

The Trustee points to the undisputed facts that at the time Debtor submitted its payment requests, neither contracts were in default and they were not terminated until after the period for which payment was requested. Thus, the payments requested have been earned and thus became and are properties of the estate subject to turnover pursuant to Section 542 of the Code.

The Courts dealing with this issue focused on the owner's contractual duty to pay. *American States Ins. Co. v. Glover Constr. Co. (In re Glover Constr. Co.),* 30 B.R. 873, 879 (Bankr.W.D.Ky.1983). They indicated that not receiving payment would put in jeopardy the contractor's ability to continue to perform the contract and would entail an entanglement in construction disputes between the owner and the surety which would negatively impact the timely completion of the project with the minimum cost. *Id. In re Glover Constr, Co., supra,* concluded that absent a showing of bad faith or an abuse of discretion, the owner's payment to a financially troubled contractor will be upheld in the face of a surety challenge. Id. Typical of the decisions is the critical difference between payments during performance and those made after performance, noting that the owner's discretion over a final payment is much more limited. *Id.* (citing *United States v. Cont'l Cas. Co.,* 346 F.Supp. 1239, 1243 (N.D.Ill.1972)).

The Trustee also cites the case of *Newkirk Constr. Corp. v. Gulf County,* 366 So.2d 813 (Fla. 1st DCA 1979). In *Newkirk,* Judge Ervin, speaking for the Court, held that progress payments for work already performed by the contractor are wholly the property of the contractor since no right arises in the surety until it comes

in and performs following the contractor's breach. *Id.* at 816.

Although there is no proof in this record, it is intimated that the monies the Trustee received on both the Manatee and the Charlotte County projects were not fully *earned* by the Debtor because the Debtor, in its request for payment submitted to Manatee County, fraudulently certified that it had "paid for work or materials for which previous payments were issued and received from the County." Based on this false representation, Manatee County certified the work as completed which was based on the fraudulent submission. Therefore, the funds which the Trustee received on the Manatee County project were not earned. Capitol asserts the identical allegation concerning the Charlotte County project. This record is devoid of any competent evidence to support even indirectly these allegations.

Based on the foregoing, this Court is satisfied that the issues involved here are not controlled by *Pearlman* and the funds paid to the Trustee on both the Manatee and Charlotte County projects before these contracts were declared to be in default were fully earned by the Debtor and the Trustee is entitled to retain the funds in dispute.

This leaves for consideration the applicability of the doctrine of equitable subrogation. Assuming without conceding that the doctrine is applicable, it is clear that one who seeks subrogation must establish that the right matured only after the contractor defaulted and the surety makes payments thereafter on a performance bond. See *In re Larbar Corp.*, 177 F.3d 439 (6th Cir.1999); *Newkirk Constr. Corp. v. Gulf County*, 366 So.2d 813 (Fla. 1st DCA 1979). Thus, the facts in this case form no basis for the application of the doctrine.

In sum, this Court is satisfied that the relevant facts are not in dispute and the Trustee is entitled to the resolution of the controversy in his favor.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment as to Counts I and II filed by Plaintiff, Capitol Indemnity Corporation (Doc. # 11) be, and the same is hereby, denied. It is further

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment as to Counts I and II filed by Defendant, Thomas S. Heidkamp, Trustee (Doc. # 12) be, and the same is hereby, granted.

A separate final judgment will be entered in accordance with the foregoing.

### FINAL JUDGMENT

THIS CAUSE came on for consideration upon the Court's own Motion for the purpose of entering a Final Judgment in the above-captioned adversary proceeding. The Court has considered the record and finds that this Court has entered a Motion for Summary Judgment in favor of the Defendant. Therefore, it appears appropriate to enter Final Judgment.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Final Judgment be, and the same is hereby, entered in favor of the Defendant, Thomas S. Heidkamp, Trustee, and against the Plaintiff, Capitol Indemnity Corporation (Capitol) in the amount of $176,026.04 ($95,702.04 [Manatee Disputed Funds] + $80,324.00 [Charlotte Disputed Funds]), or for which let execution issue. These funds are hereby property of the estate and free and clear of any lien or encumbrance by Capitol. It is further

ORDERED, ADJUDGED AND DECREED that Capitol be, and the same is

hereby, permitted to file an unsecured claim for any funds if paid out on behalf of Debtor to Debtor's creditors in connection with the Manatee County and Charlotte County projects.